# Richmond.

## COMMONWEALTH AND OTHERS V. TRUSTEES OF HAMPTON NORMAL AND AGRICULTURAL INSTITUTE.

### March 14, 1907.

1. TAXATION—*Hampton Normal Institute.*—The provisions of the charter of the Hampton Normal and Agricultural Institute place it on the same footing, in respect to its liability to taxation, as all other educational institutions of the state. It does not stand on any higher footing.

2. TAXATION—*Exemptions—Constitutional Law—Educational Institutions—Property Leased.*—It is the use to which the property of an educational institution is put which determines whether or not it is exempt from taxation under the constitution, and not the use to which profits realized from the property is put. Property not used for educational purposes, but leased to third persons, is liable to taxation, although the rents be applied to such educational purposes; but such letting of a part of its property does not render the residue not let liable to taxation.

3. TAXATION—*Exemptions—Constitutional Law—Educational Institutions—Farm Products—Sales in the Community.*—The provision of the constitution which renders liable to taxation the lands and buildings of an institution which "does work for compensation, or manufactures and sells articles in the community in which such school is located," does not include agricultural products such as milk, butter and eggs, produced on a "model farm," which is conducted by the institution in pursuance of charter powers; nor, as to articles properly classified as manufactured, is a city eight miles distant, though connected by an electric railway, in the "same community" as the school, within the meaning of the constitutional provision.

4. TAXATION—*Exemptions—Educational Institutions—Property a Source of Profit—Constitutional Law.*—Although an educational institution may derive a profit from the sale of the surplus products of a "model farm" which it is authorized by its charter to conduct, the farm so conducted is not liable to taxation under section 183 of the constitution providing that lands of such institu-

tion shall be liable to taxation if they are a "source of income or profit," where it would be difficult, if not impossible, to determine with exactness the ratio between that which would be taxable as constituting a source of revenue, and that which would be exempt as being wholly devoted to educational purposes. The state must clearly and precisely ascertain and fix the subject of taxation and the amount of the burden imposed, and all doubts in respect thereto are to be solved in favor of the citizen.

Error to a judgment of the Circuit Court of Elizabeth City county in a proceeding by motion to correct an erroneous assessment. Judgment for the plaintiff. Defendants assign error.

*Reversed in part.*

The opinion states the case.

*Attorney-General Wm. A. Anderson* and *B. A. Lewis* and *S. J. Dudley,* for the plaintiff in error.

*Jones & Woodward* and *S. G. Cumming,* for the defendant in error.

KEITH, P., delivered the opinion of the Court.

The Hampton Normal and Agricultural Institute was incorporated by an Act of the General Assembly of Virginia, approved June 4, 1870, "For the instruction of youth in the various common school, academic and collegiate branches, the best methods of teaching the same, and the best mode of practical industry in its application to agriculture and the mechanic arts; and for the carrying out of these purposes the said trustees may establish any departments or schools in the said institution."

The corporation thus formed acquired several tracts of land in the vicinity of the town of Hampton, in Elizabeth City county, and erected thereon a number of buildings and improvements, and equipped the same with furniture and appli-

ances for the purpose of educating the children of the Negro and Indian races, and training them in agriculture and the mechanic arts, and for domestic service. The institution thus established is capable of caring for and educating some seven or eight hundred pupils, who reside upon its premises and take the regular course of instruction provided; and in addition thereto four or five hundred colored children of the neighborhood receive instruction at the "Whittier" school, which, by an agreement with the school authorities of Elizabeth City county, is provided with a school building upon the premises of the Hampton Normal and Agricultural Institute, and receives valuable assistance from that institution. There were one hundred and five officers, teachers, and instructors, and one hundred and thirty-five general employees and other mechanics in the employment of the institution at the time of the beginning of this litigation. A large number of buildings have been erected and furnished at a cost of hundreds of thousands of dollars, and a considerable endowment fund has been provided. An institution of great importance and magnitude has thus been founded. This has been accomplished largely by aid from the United States government, partly by aid from the state of Virginia, but more largely by liberal contributions from philanthropic people, chiefly of the northern and eastern states of the union.

None of this property was ever assessed or taxed prior to 1903, because it was treated as exempt under the law of the state as it stood prior to the adoption of the present constitution. Subsequently to that year, the commissioner of the revenue for Chesapeake and Wythe districts in Elizabeth City county, in which districts the lands of the institution are located, acting under the advice of the attorney for the Commonwealth for Elizabeth City county, assessed the lands and personal property in those districts for taxation for the years 1903, 1904, 1905 and 1906. It appearing that the Hampton Normal and Agricultural Institute leased a parcel of its lands in Chesapeake magisterial district, embracing some forty-three acres, not used

for any educational purposes whatever, to the National Soldiers' Home for the sum of $4,000 *per annum,* and that it leased a number of houses upon its lands in the same district to various persons for fixed rentals payable in money, and subsequently that it had leased a strip of land thirty feet wide, extending through its lands in Chesapeake district, to the Hampton Roads Railway and Electric Company, and that it had been and was operating its "Shell Banks" and "Cane Brake" tracts, which lie adjacent to each other, and are called the "Hemenway" farm, as a dairy farm, and in addition to its use for purposes of instruction were selling therefrom, annually, several thousand dollars' worth of milk and butter to persons or corporations other than its students or employees, and being of opinion from information before him that it was doing work for compensation, and manufacturing and selling articles in the community in which the institute is located, the attorney for the Commonwealth for Elizabeth City county considered it his duty to advise the commissioners of the revenue for that county to assess and list the tracts of land and the property of the institute situated in Elizabeth City county for taxation for the years named; and, therefore, this was accordingly done by the assessing officers.

This action of the attorney for the Commonwealth and of the commissioners of the revenue and assessor was based upon the provisions of the constitution, section 183, which is in the following words:

"Except as otherwise provided in this constitution, the following property, and no other, shall be exempt from taxation, state and local; but the General Assembly may hereafter tax any of the property hereby exempted save that mentioned in subsection a.

. . . . . . . . . .

"(d) Buildings with the land they actually occupy, and the furniture, furnishings, books and instruments therein, wholly devoted to educational purposes, belonging to and actually and

exclusively occupied and used by churches, public libraries, incorporated colleges, academies, industrial schools, seminaries, or other incorporated institutions of learning, including the Virginia Historical Society, which are not corporations having shares of stock or otherwise owned by individuals or other corporations; together with such additional adjacent land owned by such churches, libraries and educational institutions as may be reasonably necessary for the convenient use of such buildings, respectively; and also the buildings thereon used as residences by the officers or instructors of such educational institutions; and also the permanent endowment funds held by such libraries and educational institutions, directly or in trust, and not invested in real estate: provided that such libraries and educational institutions are not conducted for profit of any person or persons, natural or corporate, directly, or under any guise or pretense whatsoever. But the exemption mentioned in this subsection shall not apply to any industrial school, individual or corporate, not the property of the state, which does work for compensation, or manufactures and sells articles in the community in which such school is located: provided that nothing herein contained shall restrict any such school from doing work for or selling its own products or any other articles to any of its students or employees.

.   .   .   and whenever any building or land, or part thereof, mentioned in this section and not belonging to the state, shall be leased or shall be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town; . . . "

The authorities of the institute resisted this action of the authorities of the county, and based their opposition thereto on the following grounds:

"First. That by section 10 of the charter of the institute, approved June 4, 1870, it was provided 'That any property held by the Hampton Normal and Agricultural Institute for its

legitimate purposes shall be exempt from public taxes so long as any property held by other institutions of learning in Virginia for their legitimate purposes is exempt; and whenever a tax shall be laid upon the same, if laid at all, the tax shall not be higher on said institution, in proportion to the value of its property than on other institutions of learning in this state.'

"Second.  That said institute does not now, and did not during the years 1903, 1904 and 1905, do work for compensation, or manufacture and sell the articles so manufactured in the community in which said school is located.

"Third.  That while it is true that said institute receives about $9,500 a year from the sale of milk and butter produced on its 'Hemenway' farm, that farm is operated as a part of its system of agricultural training and education for the training of the pupils of the school; and that all of the money realized from the sale of the products of the farm goes into the treasury of the school for the support and education of the pupils being trained there.

"Fourth.  That while it is true that said institute has leased out, and is leasing, a number of small houses for comparatively small rentals, and has leased to the National Soldiers' Home a tract or parcel of forty-three acres of land for the sum of $4,000 a year, and has leased to the Hampton Roads Railway and Electric Company a strip of land thirty feet wide through its grounds for the price of $750 a year, the entire revenue realized from these leases goes into the fund for the support of the institute and of the pupils being cared for by it, and is used for the purposes of education authorized by the charter of the institute.  It is also claimed by the authorities of the institute that if it had not leased the forty-three acres of land to the National Soldiers' Home, it would have been condemned by the United States government and taken for the purposes of the Home; and that if it had not leased the strip of land as a right of way to the Hampton Roads Railway and Electric

Company, the same would have been condemned and taken by that company for its purposes."

Such is a succinct statement of the essential facts and of the respective contentions of the parties to this cause.

We think it was clearly the purpose of the Legislature in the enactment of section 10 of its charter, taking that section altogether, to place the Hampton Normal and Agricultural Institute, in respect to its liability to taxation, upon the same footing upon which all other educational institutions of the state should, or might thereafter, be placed by law. It was intended that there should be no discrimination against the institute by the tax laws of the state. It never could have been intended to place it upon a higher footing, as is claimed, than the other educational institutions of the state occupy. It was not designed to operate as a contract between the state and the Hampton Normal and Agricultural Institute, by which it should be exempt from the payment of all or any of such taxes as the state might thereafter see proper to levy upon the property of other educational institutions of the state. The true meaning of the section is plainly shown by the last clause thereof, namely, that "whenever a tax shall be laid upon the same (that is, upon the property of the Hampton Normal and Agricultural Institute), if laid at all, the tax shall not be higher on said institution, in proportion to the value of its property, than on other institutions of learning in this state."

If section 10 of the charter of the institute is susceptible of the construction which its counsel place upon it, then it is evident that it was in conflict with the constitution of Virginia in force at the time of its enactment.

Section 1 of Article X of the constitution of Virginia (1869), then in force, provided as follows: "Taxation, except as hereinafter provided, whether imposed by the state, county or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as prescribed by law. No one species of

property from which a tax may be collected shall be taxed higher than any other species of property of equal value."

Any law which would operate to exempt all the property of one educational institution from taxation, while large portions of the property of all the other educational institutions in the state were subjeced to taxation, would be absolutely void under the constitution in force in 1870, because such taxation would be neither equal nor uniform, and because one species of property from which a tax might be collected would be taxed higher than other species of property of the same description and of equal value.

Again: It is obvious from reading section 1 of Article X of the constitution of 1869 that it requires, in the most unqualified terms, that every kind of property in Virginia shall be taxed, and taxed equally and uniformly; and had there been no exception to this, all of the property in the state of every description would have been liable to taxation; and by the terms of that constitution all of the property of whatever description in the Commonwealth was made subject to taxation, subject only to the exceptions set forth in section 3, Article X, of that constitution, which is in the following words:  "The Legislature may exempt all property used exclusively for state, county, municipal, benevolent, charitable, educational and religious purposes"; and we think it cannot fairly be claimed that houses and lots that are rented out for profit by an educational institution—for instance, the tract of forty-three acres of land rented to the National Soldiers' Home for $4,000 a year, and the thirty foot strip of land rented to the Hampton Roads Railway & Electric Company for $750 a year—are all, or either of them, in any proper or just sense, used exclusively for educational purposes.   They are leased by the institute, just as any other landowner would lease them, for the revenue which it gets out of them; and they are used exclusively for the purposes of the lessees, none of which are in any sense educational.

We agree with counsel for plaintiffs in error that it is the

use to which property is put, and not the use to which profits which are realized from such · property are put, which determines whether it shall be exempt or not. It is the buildings, together with such additional land as may be reasonably necessary for the convenient use of such buildings, wholly devoted to educational purposes, which alone are exempt from taxation under our constitution. It is not lands or buildings, the rents or profits of which are applied to educational purposes, that are exempt.

We concur in the opinion given by the attorney-general before this litigation was commenced, and in the view maintained by him in argument, that the evidence does not show that the Hampton Institute "does work for compensation, or manufactures and sells articles in the community in which such school is located," within the meaning of subsection d of section 183 of the present constitution. There is proof that it sells milk and butter, the products of its farms, in large quantities. The articles contemplated by the constitution, the manufacture and sale of which in the community in which the school is located would render the land and buildings of the institution liable to taxation, were not intended to include. agricultural products such as milk, butter and eggs have been considered to be.

This institute is situated in Elizabeth City county, eight or nine miles distant from Newport News, the market in which the sale of the manufactured articles properly so classed is charged, and although they are connected by an electric railway we do not think that it can with propriety be said that the Hampton Institute and the city of Newport News are in the same "community" in the sense in which that word is used in the section of the constitution under consideration.

The "Hemenway" farm, consisting of the two tracts of "Shell Banks" and "Cane Brake," is doubtless the source of revenue. It is a model dairy farm on which the pupils of the Hampton Institute are instructed in the most approved method of producing milk and butter, and it seems that enough of those articles

is obtained to supply the needs of the institution and to leave a surplus which finds a market at the Soldiers' Home and among the families residing upon the school grounds, and that from this source a revenue is derived amounting to something more than $9,000 a year. We have seen that these products are not taxable as manufactured articles, and that such articles as are properly classed as "manufactured," other than milk and butter, are not within the constitutional provision, because they do not find a market in the "community" in which the institute is situated. Instruction in the most approved mode of conducting a dairy farm comes within the purview of the purposes for which the Hampton Institute was formed, among which is the giving of instruction in "the best mode of practical industry in its application to agriculture." The "Hemenway" farm, therefore, is properly used as a model dairy, and to the extent to which it is so used it is free from taxation.

But it is claimed that it is liable under subsection (g) of section 183 of the constitution, which provides that "Whenever any building or land, or part thereof, mentioned in this section, and not belonging to the state, shall be leased or shall be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town"; and that, as revenue is derived from it, the whole of the "Hemenway" tract becomes liable to taxation. Indeed, the argument of counsel for the county of Elizabeth City goes further, and claims that as some part of the buildings and land are the source of revenue and profit, all of the buildings and land belonging to the institute are rendered liable.

With respect to this last contention we have no hesitation in holding that such a construction cannot be maintained. Much can be said, however, in favor of the view that so much of the land as is leased, or is the source of revenue or profit, is liable to taxation. But when we consider that the institute could lawfully establish a model farm for the purpose of scientific in-

struction in the dairy business; that it is used for purpose of instruction; that a large, if not the greater, part of the product of the farm is consumed within the institute; that the revenue derived from the marketing of the surplus, the whole of which goes into the treasury of the school for its support, is a mere incident and not the object in view; that it would be difficult, if not impossible, to determine with exactness the ratio between that which would be taxable, as constituting a source of revenue, and that which would be exempt, as being wholly devoted to educational purposes; and having regard to the rule governing the construction of tax laws that the taxing power must clearly and precisely ascertain and fix the subject of taxation and the amount of the burden imposed, and that all doubts in respect thereto are solved in favor of the citizen, we have reached the conclusion that the "Hemenway" farm is not, under existing laws, a proper subject for taxation.

In conclusion, we are of opinion that the Hampton Normal and Agricultural Institute has no charter or contractual right to exemption from the same rate and kind of taxation upon its property to which the other educational institutions of the state are liable upon property of the same description owned by such institutions; that neither the sale of farm or dairy products produced on a portion of its lands, nor the leasing of some of its houses and a portion of its lands, render all of its houses and lands liable to taxation; that the leasing of the forty-three acre tract to the National Soldiers' Home, the thirty-foot strip of land to the electric railway company, and a number of dwelling houses to sundry tenants, rendered all of such lands and houses so leased liable to be taxed just as the property of any resident citizen of the county is so liable; and that the "Hemenway" farm, which is being used as a model dairy farm, comes within the provisions of the charter of the institute, which authorizes instruction in the best mode of practical industry in its application to agriculture, and is not liable for taxation, though as an incident to its operation as a model farm its surplus pro-

duce is a source of revenue; the court being unable in such case, with exactness, to define to what extent and to what proportion of its value the "Hemenway" farm is to be considered as devoted directly to educational purposes, and what proportion of its value is to be regarded as a source of revenue under the law as it now stands.

We are indebted to counsel for their very instructive discussion of the interesting questions involved in this case, and especially to the brief of the learned Attorney-General.

We are therefore of opinion that the judgment of the Circuit Court of Elizabeth City county be reversed as to the particulars in which it is held to be erroneous in this opinion, that it be affirmed in all other respects, and that plaintiff in error recover of defendants in error their costs.

*Reversed in part.*