# Richmond

## COMMONWEALTH v. LYNCHBURG YOUNG MEN'S CHRISTIAN ASSOCIATION.

### January 15, 1914.

1. TAXATION—*Exemptions*—*Former State Policy Not Changed.*—The constitutional convention, in taking away from the legislature the power of exempting property from taxation, did not intend to change the old policy of the State on the subject of exempting property used wholly for certain charitable purposes, but placed limitations on the use of property exempted, so as to prevent the perversion or abuse of the liberality of the State.

2. TAXATION—*Exemptions*—*Strict Construction*—*Y. M. C. A. Buildings*—*State Policy.*—While the general rule is that provisions exempting property of individuals and private corporations from taxation should be strictly construed, and taxation of such property is the rule and exemption from taxation the exception, yet, as the policy of the State has been to exempt such property as that held by Young Men's Christian Associations, section 183 of the Constitution, relating to such property, should not be construed with the same strictness as that applicable to provisions making exemptions contrary to the policy of the State, and as to such property exemption is the rule and taxation the exception.

3. TAXATION—*Tenants*—*Lodgers*—*Occupants of Rooms in Y. M. C. A. Building.*—The occupant of a room or rooms in a tenement is a lodger and not a tenant where the owner retains his character as master of the house and at the same time retains the general control over the whole house. Rooms in a Y. M. C. A. building so occupied are not leased within the meaning of section 183 of the Constitution.

4. TAXATION—*Rooms in Y. M. C. A. Building*—*Occupation for Hire*—*Effect on Exemption.*—If the dominant purpose in the use made of rooms in a Y. M. C. A. building is to obtain revenue or profit, although it is to be applied to the general objects of the association, the property is liable to taxation. But if, as in the case at bar, the use made of the rooms has direct reference to the purposes for which the association was incorporated, and

tends immediately and directly to promote these purposes, then its use is within the provisions of the constitution exempting the property from taxation, although revenue or profit is derived therefrom as incident to such use.

Error to a judgment of the Corporation Court of the city of Lynchburg on an application to correct an erroneous assessment of real estate. Judgment for the applicant. Commonwealth assigns error.

*Affirmed.*

The opinion states the case.

*Samuel W. Williams, Attorney General,* and *Robert D. Yancey,* for the Commonwealth.

*Samuel A. Anderson, Harrison & Long,* and *Caskie & Caskie,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

In a proceeding to correct an alleged erroneous assessment of the real estate of the Lynchburg Young Men's Christian Association it was held that the property assessed was exempt from taxation under the Constitution, and an order was entered by the corporation court of that city exonerating the association from the payment of the tax assessed. To that order this writ of error was awarded upon the petition of the Commonwealth.

It is not controverted here that the property upon which the tax in question was assessed is exempt from taxation if it is actually and exclusively occupied and used by the association for the purposes for which the association was incorporated, viz., "the improvement of the spiritual, mental, social and physical condition of young men and boys." The contention of the Commonwealth is that the whole of the property "is not so occupied and used, but that the

third and fourth stories of the building in question are entirely occupied as dormitories or bedrooms, which are leased or rented out to occupants for a monthly rental amounting in the aggregate to about $5,000 a year, and that the proceeds of the same are applied to the general purposes of the association."

By section 183 of the Constitution it is declared that, except as otherwise provided therein, no other property than that which is enumerated in that section shall be exempt from taxation. Among the kinds of property enumerated (sub-section "e") is "real estate belonging to and actually and exclusively occupied and used by, and personal property, including endowment funds, belonging to, Young Men's Christian Associations and other similar religious associations, orphan or other asylums, reformatories, hospitals and nunneries, which are not conducted for profit, but purely and completely as charities."

By said section 183 it is further declared that "whenever any building or land, or any part thereof, mentioned in this section and not belonging to the State shall be leased or shall be a source of revenue or profit, all such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town."

The exemptions from taxation provided for by section 183 of the Constitution are in accord with the policy of the State from an early day. The Constitutional Convention, in taking away the power of exemption from the legislature, did not intend to change the old policy of the State on the subject, but placed limitations upon the use of property exempted so as to prevent the perversion or abuse of the liberality of the State.

It is insisted by the Commonwealth that the provision of section 183 of the Constitution must receive a strict construction. The general rule is that provisions exempting property of individuals or private corporations from tax-

ation must be strictly construed, taxation of such property being the rule and exemption from taxation the exception. One of the reasons for this is that all such persons should bear their fair share of the burdens of taxation, and that lessening the burden of one increases the burdens of others. But as the policy of the State has always been to exempt property of the character mentioned and described in section 183 of the Constitution, it should not be construed with the same degree of strictness that applies to provisions making exemptions contrary to the policy of the State, since as to such property exemption is the rule and taxation the exception.

The real estate of the association consisted of a lot on Church street, in the city of Lynchburg, eighty feet by 132 feet, upon which was erected a five-story building, including the basement, and the whole was valued at $48,000. The use made of the building by the association, as stated by the court in its finding of the facts (the correctness of which is not controverted), are as follows:

"Fourth. That in the basement of this building is a billiard room, tenpin alley, swimming pool and numerous shower and other baths. On the first floor is an office and lobby, a library and reading room and a gymnasium. On the second floor is an auditorium, a boys' department, consisting of a library, reading room and game room, a parlor and several educational class rooms. The third and fourth floors contain dormitories or bedrooms, of which there are forty-five in number.

"Fifth. That the billiard room, tenpin alley, swimming pool and baths are used only by members of the association and their out-of-town guests; for the use of the billiard tables they pay five cents per one-half hour; for the tenpin alley, five cents per game; and for the baths and swimming pool no charge is made. The office is occupied by the secretary and his assistants in and about the work

of the association. The lobby is open to the public, and no fee of any sort is charged for its use. The gymnasium is used for the various classes in physical culture, taught by a director employed by the association. None but members are allowed these privileges, and no extra charge is made therefor. The auditorium is used for all public meetings, the object and purpose of which is approved by the directors; no rental is charged for its use. None but members of the association are allowed to use the boys' department, and no charge is made or money ever received for the use of this department or any of its privileges. The educational class-rooms are used for the conduct of the night school. No fees are charged for instruction in this school. Some of the pupils do pay very small sums, because they prefer to do so, but these fees do not pay over one-half the cost of conducting the school, and are not compulsory. The dormitories or bedrooms are used by members of the association only. They pay for these rooms from $8.00 to $15.00 per month, according to size and location. These rooms are furnished, and the price paid includes light, heat and janitor services. No one except members who pay fee for full membership can occupy these rooms. The actual amount received from these dormitories is about $5,000 *per annum*. No itemized account of the cost of maintaining them has been kept, and no accurate estimate of the cost of heating, lighting, cleaning or superintending them can be made; it does, however, amount to a considerable sum *per annum*.

"Sixth. Any man or boy over twelve years of age, of good moral character, is eligible to membership. No religious test of any sort is applied. The membership includes Catholics, Jews and all the various Protestant denominations, as well as many persons who are not members of any church. One-third of the directors are elected at the annual meeting each year, at which meeting all the

members who are members of evangelical churches are entitled to vote, the only qualification for a director being that he must be a member of an evangelical church.

"Seventh. The cost of maintaining the work of this association in its building aforesaid is about $15,000 *per annum;* $5,000 of this sum is collected from persons occupying the rooms or dormitories hereinbefore referred to; the remaining $10,000 is raised from the membership fees and such contributions as may be made by the friends of the association. An annual fee of $10.00 is charged to men who are to be entitled to all the privileges of the association, and for like privileges boys are charged $5.00 or $6.00 *per annum.* Some deduction is made from these sums for persons whose salaries or wages are below a given sum. The association has no capital stock and no provision for making profits or declaring dividends. As a matter of fact, the work of the association is always done at a loss. . . ."

It is not claimed that the association is not occupying and using the basement and the first and second stories of the property in a way which directly promotes the purposes for which the association was incorporated. The question, therefore, to be determined here is whether or not the use made of the third and fourth stories is such as to exclude the property from the exemption provided by the Constitution. If the letting of the rooms in those stories by the association to its members for sleeping or lodging purposes is a renting or leasing of them, the property was not occupied and used exclusively by the association for its purposes within the meaning of the Constitution.

In the case of *Commonwealth* v. *Hampton Institute,* 106 Va. 614, 56 S. E. 594, which involved the question of the right of an educational institution to exemption from taxation under the provisions of section 183 of the Constitu-

tion, sub-section "d," it was held that property leased to third persons is liable to taxation, although the rents be applied to the educational purposes of the institution.

Mr. Taylor, in his work on Landlord and Tenant (9th ed.), section 66, in discussing the difference between a tenant and a mere lodger, says that the latter is "one who occupies a portion of a tenement which is under the control or in the occupancy of another. He cannot have *trespass quare clausum fregit* if entered upon, and is not liable for rent, or in use and occupation, but can sue and be sued only for a breach of the contract. His agreement is not within the statute of frauds, and his rights do not differ from those of a boarder in a hotel or boarding-house who has no interest in the realty, even though he has a contract for the use of specific rooms."

In *Wansey* v. *Perkins*, 7 Man. & Granger 151, the matter to be determined turned upon the question whether the occupation of one of the parties was that of a mere lodger or that of a tenant. In holding that such occupant was a mere lodger and not a tenant, Chief Justice Tindall, in delivering the opinion of the court, said: "If the premises in the occupation of this claimant were so completely divided from the rest of the house that the landlord had given up all control over them, the case would be different. But here the landlord lets the claimant into possession of the second floor, the landlord retaining possession of the rest of the house. This puts the claimant in the condition of a lodger or inmate."

It was held in *White* v. *Maynard*, 111 Mass. 250, 252, 15 Am. Rep. 28, that an oral contract by the keeper of a boarding house to provide a man and his family for six months with board and lodging, with three specified rooms as lodgings, and to light and heat the same, was not within the statute of frauds because the occupant was a mere lodger and not a tenant.

The cases generally hold that the occupant of a room or rooms in a tenement is a lodger and not a tenant where the owner retains his character as master of the house, occupying a part of it himself, or by his servants, and at the same time retains the general control over the whole house. See *Cook* v. *Humber*, 11 C. B. N. S. 33; *Brewer* v. *McGowan*, 5 C. P. 239; *Thompson* v. *Ward*, 6 (L. R.) C. B. 327, 360-3; *Wilson* v. *Merton*, 1 Denio 602, 604.

It is clear under the authorities, as it seems to us, that the members of the association who occupy the rooms or dormitories in the third and fourth stories of the building are not tenants or lessees, but mere lodgers. The association, by its officers and servants, occupy a part of the building and it retains the control over the whole of it.

But it is further insisted that, even though the rooms in the third and fourth stories are not leased, they are a source of revenue and profit to the association.

If the dominant purpose in the use made of these rooms is to obtain revenue or profit, although it is to be applied to the general objects of the association, it would render the property liable to taxation. But if the use made of those rooms has direct reference to the purposes for which the association was incorporated, and tends immediately and directly to promote those puropses, then its use is within the provisions exempting the property from taxation, although revenue or profit is derived therefrom as incident to such use.

In the case of *Commonwealth* v. *Hampton Institute*, *supra*, it was held, that "Hemenway" farm was not liable to taxation, although revenue or profit was derived from the use made of the farm. One of the grounds upon which that conclusion was rested was that the institute had the right to establish a model farm for scientific instruction in the dairy business, and that in so using the farm as that it produced revenue or profit which went into the

treasury of the school did not render it liable to taxation, since deriving revenue or profit was a mere incident and not the object in view in so using the farm. The view taken in that case is in accord with the weight of authority in other jurisdictions.

In *Emerson* v. *Miller Academy,* 185 Mass. 414, 70 N. E. 442, where substantially the same question was involved as is now being considered, it was held that where the occupation and use of real estate was to produce income to be expended for the purposes for which the educational institution was incorporated, it was not within the statute exempting the property from taxation, but where the dominant purpose in the occupation and use of the property was directly to accomplish some of the objects for which the corporation was established, it was within the provision of the statute. The fact that incidentally there were results from the use of the property which would not entitle it to exemption was held to be immaterial, so long as the dominant purpose of the occupation was within the statute. In that case the real estate of the educational institution was used for dwelling houses of teachers of the academy, with their families, as an aid in preserving discipline and bringing about closer relations with the pupils, the use being allowed as a part of the compensation to the teachers. It was held that such use of the property did not take it out of the protection of the statute, since the dominant purpose of the use or occupation was in promotion of the purposes for which the academy was incorporated.

In *Yale University* v. *Town of New Haven,* 71 Conn. 316, 42 Atl. 87, 43 L. R. A. 490, where the statute provided that "buildings or portions of buildings exclusively occupied as colleges, academies, churches, public school houses, or infirmaries" should be exempt from taxation, it was held that fees of students, whether apportioned as room rent or

48

tuition, could not be treated as income of real estate.   In discussing the question the court said: "The fact that certain sums are paid for the use of the rooms occupied does not alter the character of the occupation.   A church is none the less a church because the worshipers contribute to the support of the services by way of pew rent.   A hospital is none the less a hospital because the beneficaries contribute something towards its maintenance.   And a college is none the less a college because its beneficiaries share the cost of maintenance; and it is immaterial whether such contribution is lumped in one sum or apportioned to sources of expense, as tuition, room rent, lecture fees, dining hall," &c.   See also generally on the subject *Linton* v. *Lucy Cobb Inst.,* 117 Ga. 678, 45 S. E. 53; *Philadelphia* v. *Women's Christian Association,* 125 Pa. 572, 17 Atl. 475; *Davis* v. *Camp Meeting Assn.,* 57 Ohio, 257, 49 N. E. 401; *Mount Herman Boys' School* v. *Inhabitants of Gill,* 145 Mass. 159, 13 N. E. 354.

It cannot be said in this case that the dominant purpose of the managers of the Lynchburg association, in the occupation and the use made of its building, the third and fourth stories as well as the basement and other stories, was not to accomplish, and did not tend directly and immediately to accomplish, the object for which the association was incorporated and existed.   Some of the objects of the association, as stated in the facts found by the trial court, were improvement of the spiritual, mental, social and physical condition of young men and boys, and to this end it maintains the building (which it is now sought to tax) on Church street, between Tenth and Eleventh streets, in the city of Lynchburg, which is in charge of a secretary and corps of assistants, who, together with the necessary janitors and other employees, are employed and paid by the association.   The secretary and his assistants seek out young men and boys and endeavor to bring them under

moral and religious influences, to secure their attendance at some place of worship, to introduce them to the members and privileges of the association, to aid them in selecting suitable boarding houses and employment, and by every possible means surround them with Christian influences. The association maintains a library and reading room, where good books, the daily papers, and a large number of magazines are at the disposal of the members.  .  .  . During the week Bible classes are taught in this building; large numbers of young men being gathered in these classes, who engage in the regular and systematic study of the Bible.  .  .  .  The association maintains a regular night school, where certain nights in each week reading, writing, arithmetic, penmanship, bookkeeping and other common school branches are taught to such young men and boys as are employed during the day."

Manifestly, a member of the association who was a lodger or inmate of the building would be in a better situation to take advantage of the privileges offered by the association, and more likely to take advantage of them, other things being equal, than a member who lodged elsewhere.

The court is of opinion that there is no error in the order complained of, and that it should be affirmed.

*Affirmed.*