# Richmond

## County of Hanover v. Trustees of Randolph-Macon College.

June 11, 1962.

Record No. 5411.

Present, All the Justices.

*Leslie D. Campbell, Jr., Commonwealth's Attorney*, for the plaintiff in error.

*Walter E. Rogers (Williams, Mullen & Christian*, on brief), for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

This is an appeal by the county of Hanover from an adverse decision in a proceeding filed by the trustees of Randolph-Macon College pursuant to §§ 58-1145 to 58-1155, Code of 1950, 1959 Replacement Volume, in which the trial court held that certain real estate owned by the college had been erroneously assessed for taxation and ordered a refund of the taxes paid.

The county's several assignments of error present the following question: Is the land owned by the trustees of the college in the College Park subdivision primarily used for educational purposes or purposes incidental thereto, so as to be exempt from taxation under the provisions of § 183 of the Constitution of Virginia? The pertinent parts of the section read as follows:

"Unless otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes:

\* \* \* \* \*

"(d) Property owned by public libraries, incorporated colleges or other incorporated institutions of learning, not conducted for profit, together with the endowment funds thereof not invested in real estate. But this provision shall apply only to property primarily used for literary, scientific or educational purpose or purposes incidental thereto. It shall not apply to industrial schools which sell their product to others than their own employees or students.

\* \* \* \* \*

"Whenever any building or land, or part thereof, mentioned in this section, and not belonging to the State, shall be leased or shall otherwise be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town. But the General Assembly may provide for the partial taxation of property not exclusively used for the purposes herein named."

The county contends that the evidence is not sufficient to show that the land in College Park is used for educational purposes or purposes incidental thereto; and that real estate acquired by a tax exempt educational institution for purposes of resale at a profit or to be held for future use for educational purposes is not exempt from taxation.

Randolph-Macon College, a tax exempt liberal arts college, is located in the town of Ashland, Virginia. Its small campus is situated on property in the town near its northern corporate limits and on adjoining property to the north and east lying outside of the town in Hanover county.

During the years 1946-1947 the enrollment at the college expanded from 300 to 500 students. This influx of students taxed the physical properties of the college, and housing facilities for many members of the faculty were not available.

To meet the serious problems of obtaining and retaining capable professors, to expand its campus, and to protect the college property, the trustees found it necessary to purchase, during the years 1946 and 1947, twenty-nine vacant lots in a residential subdivision known as College Park, which is adjacent to and east of the campus, and lying between it and U. S. highway route 1. The property acquired was the only land adjacent to the campus which was both available and desirable. Several other lots in College Park were purchased between the years 1951 and 1959, and it is the plan and desire of the trustees of the college to purchase all the remaining lots in the subdivision as they become available. A gateway and arches are to be constructed where the lots front on route 1 to identify the campus, and a substantial gift was made several years ago toward the cost.

The lots are made available for purchase by members of the faculty of the college, and the college assists them in constructing and financing their homes. As the lots are sold by the college they are assessed for taxation in the names of the purchasers. Since 1958 the purchasers are required to give to the college the first refusal to repurchase should the owners desire to sell.

Since acquiring the property in College Park the college has conveyed twelve lots and a part of one lot to nine professors, one retired professor of another college who is related to a member of the Randolph-Macon staff, and two to a member of the college staff, whose late husband was a member of the college faculty for a number of years, as part payment on the purchase by the college of a house owned by her husband and moved several years ago from the old campus to the subdivision.

Only one lot and an easement across another have been sold to anyone not directly connected with the college, and that was to a purchaser who already owned a home in College Park. The lot and easement were conveyed in 1960 at the time the county made sewer service available, and the purchaser verbally agreed to give the college the first refusal should he decide to sell his property.

The remaining property owned by the college in College Park was assessed for taxation for the first time during 1957 under a general reassessment of real estate in the county, and levies were made for the years 1958, 1959 and 1960.

The home which was moved from the old campus to College Park is rented by the college to two members of the faculty.

The college has realized a gross profit of $915 on all the lots sold except one, which was a gift, and from which it received $1000.

In construing § 183 of the Constitution we have said that as a general rule provisions exempting property of individuals or corporations from taxation must be strictly construed, taxation being the rule rather than the exception. But since it has always been the policy of this State to exempt property of the character mentioned in the several clauses of § 183 of the Constitution, it should not be construed with the same degree of strictness that applies to the provisions exempting property of individuals or private corporations, and as to such property exemption is the rule and taxation the exception. *Commonwealth* v. *Lynchburg Young Men's Christian Association*, 115 Va. 745, 747, 80 S. E. 589, 590, 50 L.R.A. (N. S.) 1197; *Commonwealth* v. *Smallwood Memorial Institute*, 124 Va. 142, 144, 97 S. E. 805, 806.

There is no merit in the argument of the county that the evidence does not support the contention of the college that its property in College Park is used for educational purposes or purposes incidental thereto. The evidence shows that the president of the college and its trustees were deeply concerned over the lack of available housing for members of the faculty, and they were of the opinion that if capable faculty members were to be obtained and retained, and if the college was to perform the functions for which it was established, it was necessary to extend its campus to have land available upon which the members of the faculty could construct their own homes. The dominant purpose of making the land available to members of the faculty was to anchor them to the college and thereby promote efficient administration.

The heart of a college is its faculty. A college cannot function without students, and certainly it cannot have students without a

faculty. Constant changes in a college faculty tend to hinder the efficiency of a college.

Educational processes are promoted in the homes of teachers, for it is there that preparation is generally made for lectures and examinations and other consequent duties. It is not uncommon to find students in a small college, such as Randolph-Macon, in conferences with professors in their homes.

■ There is no merit in the county's argument that the exemption should not be allowed because the college derived a profit from the sale of the lots.

Where the dominant purpose of an institution or corporation exempt from taxation under § 183(c), (d) and (e) of the Constitution is to use property or to acquire it for purposes of resale to obtain revenue or profit, although it is to be applied to the general objects of the institution, the property is liable for taxation. But if the use or sale of the property has direct reference to the purposes for which the institution was created, and tends immediately and directly to promote those purposes, it is then within the exemption provision of the Constitution, although revenue or profit is derived therefrom as an incident to its use or resale. *Commonwealth* v. *Hampton Institute*, 106 Va. 614, 56 S. E. 594; *Commonwealth* v. *Lynchburg Young Men's Christian Association, supra*, 115 Va. at p. 752, 80 S. E. at p. 591; *Commonwealth* v. *Smallwood Memorial Institute, supra*, 124 Va. at pp. 147, 148, 97 S. E. at p. 807.

In *Commonwealth* v. *Hampton Institute, supra*, an educational institution sold some of the surplus dairy products produced in connection with the operation of its "Hemenway Farm." We held that, since the institution had the right to own a farm for scientific instruction, the revenues or profits derived from the sale of the surplus products going into the treasury of the institution was a mere incident to and not the object in view in operating the farm, and that the farm was exempt from taxation under § 183(d) of the Constitution. (106 Va. at pp. 622-623, 56 S. E. at pp. 597, 598.)

In the present case the college was not engaged in the business of buying, selling and leasing real estate for a profit. Its dominant purpose in acquiring the lots and selling them to members of the faculty, and renting the two-family apartment to two members of the faculty, was, as heretofore stated, to anchor the faculty to the college. The action of the trustees has a direct reference to the purposes for which the college was established, and tends immediately and directly to promote an efficient administration. The small profit derived is a mere

incident to the main purpose. The one isolated sale to one who had no connection with the college does not deprive the college of its exemption under § 183 (d) of the Constitution. It was an advantage to the college to have a sewer connection to the property owned by another, and from whom it obtained an oral first option to purchase in the event of the sale of the property.

The county's argument that land held for future use for educational purposes is not exempt from taxation is without merit.

It is true that we said in *City of Richmond* v. *Hospital*, 202 Va. 86, 95, 116 S. E. 2d 79, 84, that when an organization entitled to an exemption acquires real estate with the intention of applying it to an exempt use, it must be used for that purpose within a reasonable time to entitle it to the exemption from taxation. But that principle has no application under the facts of the present case. All the land acquired by the college became a part of the college campus, and it was used for educational purposes or purposes incidental thereto.

Where constitutional provisions or statutes exempt from taxation real estate used for educational institutions not operated for profit, what lands are reasonably required to promote the purposes for which the institution was established must be determined by the officers of the institution, and in the absence of a showing that they have not acted in good faith and not unreasonably in determining how to occupy and use the real estate of the corporation, their determination shall not be interfered with by the courts. *Emerson* v. *Trustees of Milton Academy*, 185 Mass. 414, 415, 70 N. E. 442, 443; *Phillips Academy* v. *Andover*, 175 Mass. 118, 55 N. E. 841, 843, 48 L. R. A. 550.

The evidence shows that the trustees acted in good faith and made a reasonable determination that the campus must be expanded and as to how the land was to be used in promoting the purpose for which the college was established.

If a college is to serve the purpose for which it was established it is imperative that it prepare in advance for a reasonable expansion of its campus. This is particularly true in view of the increasing demand of students for admission to institutions of higher education. It would be impractical for the trustees of a college to wait until the need became immediate and then find, as so many colleges have found, that it is surrounded by valuable property which cannot be acquired except at prohibitive prices.

For the reasons stated, the judgment of the court below is

*Affirmed.*