## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

WASHINGTON COUNTY, VIRGINIA v. SULLINS COLLEGE CORPORATION.

March 8, 1971.

Record No. 7276

Present, All the Justices.

*Bradley Roberts* (*David D. Brown, Commonwealth's Attorney for Washington County*, on brief), for plaintiff in error.

*George M. Warren, Jr.; G. R. C. Stuart* (*James P. Jones; Warren & Bowie; Penn, Stuart & Eskridge*, on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

On December 29, 1960, Sullins College Corporation, hereinafter referred to as the college, filed an application pursuant to Code § 58-1145 for relief from erroneous real estate tax assessments against its Camp Sequoya property by Washington County for the years 1958, 1959 and 1960, on the ground that it was exempt from local taxation under § 183(d) of the Constitution and Code § 58-12(4).

The county filed its answer denying that the assessments were erroneous and that the property was exempt, and the matter was continued. On September 23, 1968, the college filed a petition to amend its original application to include a request for relief from the payment of taxes on the property for the additional years of 1961 through 1968. The county objected to the amendment and the college then filed a second application on December 30, 1968, reiterating the allegations of the first, and expressly requesting relief from the taxes levied for the years 1966, 1967 and 1968.

The applications were consolidated for trial beginning on October 28, 1969. After an *ore tenus* hearing the trial court held that the property was exempt from taxation, denied the college's petition to amend its original application asking that it be relieved from the assessments for the years 1961 through 1965, and ordered (1) that the college be exonerated from the payment of the taxes for the years 1958, 1959, 1960, 1966, 1967 and 1968; (2) that the county treasurer refund to the college the sum of $1,436.89, that being the amount paid by the college under protest for taxes assessed against the property for the year 1958, including penalties, interest and costs; and (3) that the college pay the taxes assessed against the property for the years 1961 through 1965, together with penalties, interests and costs. We granted the county a writ of error to the judgment, and the college has assigned cross-error.

The questions presented are whether the college's Camp Sequoya property is exempt from real estate taxes under the provision of § 183(d) of the Constitution of Virginia and Code §§ 58-12 and 58-14; and, if the property is exempt from county taxes, whether the trial court erred in not allowing an amendment to the original application to include relief for the years 1961 through 1965.

Section 183 provides, in part, as follows:

"*Property exempt from taxation.*—Unless otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes:

\* \* \* \* \*

"(d) Property owned by public libraries, incorporated colleges or other incorporated institutions of learning, not conducted for profit \* \* \*. But this provision shall apply only to property primarily used for literary, scientific or educational purposes or purposes incidental thereto. \* \* \*

\* \* \* \* \*

"Whenever any building or land, or part thereof, mentioned in this section, and not belonging to the State, shall be leased or shall otherwise be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county \* \* \*."

Code § 58-12, as amended, reads in part:

"*What property, real and personal, exempt from taxation, State and local.*—The following property shall be exempt from taxation, State and local, including inheritance taxes:

\* \* \* \* \*

"(4) Property owned by \* \* \* incorporated colleges or other incorporated institutions of learning \* \* \* not conducted for profit \* \* \*. (But this provision shall apply only to property primarily used for literary, scientific or educational purposes or purposes incidental thereto.) \* \* \*"

Code § 58-14 provides, in part:

"*Exemptions not applicable when building is source of revenue.*—Whenever any building or land, or part thereof, mentioned in § 58-12, and not belonging to the State, shall be leased or shall otherwise be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county \* \* \* except as is now or may hereafter be provided by law \* \* \*."

Sullins College, located in Bristol, Virginia, was established in 1870. It is an incorporated, non-stock, non-profit, accredited two-year educational institution for women.

In 1920 the college constructed an artificial lake on land adjoining its campus, and built a lodge next to the lake for use by the students of the college. The facilities were enlarged in 1925 when the college began a summer program for girls which it operated as Camp Sequoya. When a portion of the lake was taken for highway purposes in 1957 the location became undesirable for camp use.

In 1958 the camp was moved to a site in the county on South Holston Dam, fourteen miles from the campus in Bristol, after the col-

lege acquired a 45-acre tract of land adjoining a 9½-acre tract it had owned since 1953. A cabin was situated on the 9½-acre tract, and the students of the college used the property for physical education and recreational programs. The college constructed a number of buildings and recreation areas on the combined 54½-acre tract and has a capital investment in the property of approximately $600,000.

The camp conducts two five-week sessions during the summer months for girls from 8 to 17 years of age. It has an enrollment capacity of 250 for each session. The average net operating income from the camp for the ten years through 1968 was approximately $48,300 each year. This amount, which made no allowance for repairs to buildings or depreciation, went into the general operating account of the college.

The camp program includes swimming, sailing, horseback riding, tennis, archery, riflery, golf, drama, drawing, painting, composition, design, music appreciation, ballet and literature. A library is provided and reading is required.

The business manager of the college testified that much of the college's moveable equipment is used for the summer program at the camp.

The faculty and student leaders use the camp property as a meeting place to plan for the college's orientation week. The testing and orientation programs for new students at the beginning of each school year are held there. The college uses the camp facilities throughout the regular school year for art and science classes, dances and mixers for students, and week-end meetings for student groups. Alumni meetings and activities and college recruiters' meetings are also held there.

Dr. William T. Martin, president of the college, testified that the camp's program, with its instruction in literature and the fine arts, goes far beyond the offerings of the usual summer camp, and is in furtherance of the educational purposes of the college. Many members of the college's faculty and staff are provided summer employment, which is of great importance to the college since it does not operate a summer school. The camp is a valuable asset to the college's recruiting program.

Dr. Henry L. Ashmore, president of Armstrong State College, was chairman of the visitation committee of the Southern Association of Colleges and Schools that made an evaluation of the college and its summer program for re-accreditation purposes in 1963. He testified that the camp's program, providing instruction in physical

education, art, music and literature, is educational; that it is typical of programs found in elementary and secondary schools and colleges; and that the summer program is an important adjunct to the educational purposes of the college.

The county argues that Camp Sequoya is not an incorporated college or other incorporated institution of learning not conducted for profit, and the camp program is not educational within the meaning of the applicable provisions of § 183(d) of the Constitution and Code §§ 58-12 and 58-14, so as to qualify the camp property for tax exemption status.

■ Beginning with *Commonwealth* v. *Lynchburg Y.M.C.A.*, 115 Va. 745, 747-48, 80 S.E. 589, 590, 50 L.R.A.(N.S.) 1197 (1914), we have applied a liberal interpretation to such exemption provisions. See *Richmond* v. *Day Nursery Ass'n*, 207 Va. 561, 565-66, 151 S.E.2d 370, 374 (1966), and the numerous cases there cited.

Section 183(d) of the Constitution and § 58-12(4) of the Code clearly state that property owned by incorporated colleges or other incorporated institutions of learning not conducted for profit shall be exempt from State and local taxation, provided the property is primarily used for literary, scientific or educational purposes or purposes incidental thereto.

In *Richmond* v. *Day Nursery Ass'n, supra*, a non-stock, non-profit corporation operated a day nursery for children from 3 to 6 years of age on its property. A trained staff conducted a program which included story telling, nursery rhymes, musical games, arts and crafts, rest, and health inspection. The children were also taught numbers and the days of the week. We held that the nursery was an incorporated institution of learning not conducted for profit; that the property was used primarily for educational purposes or purposes incidental thereto within the intent of § 183(d) of the Constitution and Code § 58-12(4); and that as such the property was exempt from taxation.

In *Hanover County* v. *Trustees*, 203 Va. 613, 617, 125 S.E.2d 812, 815 (1962), we said that "if the use * * * of the property has direct reference to the purposes for which the institution was created, and tends immediately and directly to promote those purposes, it is then within the exemption provisions of the Constitution, although revenue or profit is derived therefrom as an incident to its use * * *." Citing *Commonwealth* v. *Hampton Institute*, 106 Va. 614, 56 S.E. 594 (1907); *Commonwealth* v. *Lynchburg Y.M.C.A., supra*, 115 Va. at

752, 80 S.E. at 591; *Commonwealth* v. *Smallwood Memorial Institute*, 124 Va. 142, 147, 97 S.E. 805, 807 (1919).

In the present case the uncontradicted evidence shows that the Camp Sequoya property is owned by an incorporated educational institution not conducted for profit. Since 1958 the camp property has been used by the college primarily for educational purposes or purposes incidental thereto. The educational program conducted at the camp is typical of those found in elementary schools, high schools and colleges. The use of the property tends directly to promote the purposes of the college in that it is an aid in the recruitment of students and in the retention of its faculty and staff, and provides additional facilities for the implementation of its program.

Since the camp property is owned by an incorporated institution of learning not conducted for profit and the property is primarily used for educational purposes, or purposes incidental thereto, the revenue or profit derived from its use is incidental to such use and does not deprive the property of its tax exempt status under the provisions of § 183 of the Constitution and Code §§ 58-12 and 58-14. Thus we hold that the camp property is exempt from taxation.

■ In its cross-error the college contends that the trial court erred in denying its petition to amend the original application in order to obtain relief from the taxes levied for the years 1961 through 1965. We do not agree.

Code § 58-1145 provides, in part:

"Any person assessed with county * * * levies or other local taxes on real estate, aggrieved by any such assessment, may, unless otherwise specifically provided by law, within two years from the thirty-first day of December of the year in which any such assessment is made * * * apply for relief to the circuit court * * * wherein such assessment was made. * * *"

The college's remedy is based solely on the statute and is thus limited thereby. Since the college did not file an application for relief for the years 1961 through 1965 within the two-year statutory period, the court was without jurisdiction to consider its request for relief by an amendment to the original application. *Town of Leesburg* v. *Loudoun Nat. B'k*, 141 Va. 244, 246-47, 126 S.E. 196, 197 (1925).

For the reasons stated, the judgment of the court below is

*Affirmed.*

GORDON, J., dissenting.

Perhaps, as counsel for the College suggest, Camp Sequoya is the finest camp in the area. It may preeminently teach swimming, sailing, horseback riding, tennis, archery, riflery, golf, drama, drawing, painting, composition, design, music appreciation, ballet and literature. But the record shows that Camp Sequoya is after all just another summer camp, like hundreds of other summer camps dedicated to recreation for campers and profit for owners.

The record makes clear, I believe, why Sullins College invested substantial sums in land, buildings and equipment for a summer camp. The College's sound business judgment has been proved by the $483,000 of net income produced by Camp Sequoya for the College during the period 1959-1968—about 24% of the College's net income during that period.[1]

Understandably, the faculty, students and alumni use the bucolic Camp property for meetings, dances and mixers during the academic year. But those activities are quite incidental to the primary use of the Camp property. As brought out by a witness for the College, the Camp property is vacant most of the time, except in the summer. And during the summer it is used as a camp for precollege-age girls.

Accordingly, in my opinion, the Camp property is not exempt from taxation under § 183 of the Constitution of Virginia. Paragraph (d) exempts only property "primarily used for literary, scientific or educational purposes or purposes incidental thereto". Because the Camp property is used primarily as a recreational summer camp, and only incidentally for educational purposes, I believe the property is expressly excluded from the exemption afforded by paragraph (d).[2]

But even if the Camp property were used primarily for educational purposes or purposes incident to education, its property cannot be

---

[1] The majority opinion states that repairs to buildings and depreciation have not been deducted from net income. However, counsel for Washington County asserted in their brief, and counsel for the College did not deny, that during the ten-year period the College received an additional $145,000 from operation of the Camp because certain general expenses of the College were charged to the Camp.

[2] An academic who testified as an expert witness for the College expressed the opinion that "any experience which would assist a child to find his niche in society and to become a useful member of society is in effect educational". In his view "horseback riding", "water skiing", or merely "being together in a group" is educational. Camp Sequoya of course would qualify as an educational institution under this expert's all encompassing definition. To adopt his definition as the Constitutional meaning of "educational", which I believe unwarranted, would vitiate the restrictions set forth in paragraph (d).

exempt from taxation because of a subsequent provision of § 183: "Whenever any building or land, or part thereof, . . . shall be leased or shall otherwise be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town." The record shows not only that profit was intended, but also that profit has been abundantly realized from the operation of Camp Sequoya.

Our holdings in *Hanover County* v. *Trustees of Randolph-Macon College*, 203 Va. 613, 125 S.E.2d 812 (1962), and *Richmond* v. *Southside Day Nursery Assn*, 207 Va. 561, 151 S.E.2d 370 (1966), do not control this case. The *Randolph-Macon* case involved land bought by the college to be made available to its faculty for housing. The evidence showed that the college was concerned about the lack of available housing for its faculty and bought the land in the belief "that if capable faculty members were to be obtained and retained, and if the college was to perform the functions for which it was established, it was necessary to extend its campus to have land available upon which the members of the faculty could construct their own homes". 203 Va. at 616, 125 S.E.2d at 815. We held the property exempt under § 183 of the Constitution because it was acquired and held by the college primarily for educational purposes, even though a profit of $915 had been incidentally realized by the college upon the sale of lots to faculty members.

The *Southside Day Nursery* case involved property owned by a non-profit corporation and used as a nursery for children of working parents. The evidence showed that the Southside Day Nursery employed an executive director and four supervisors for the children, "all college trained in the field of childhood education". 207 Va. at 564, 151 S.E.2d at 373. According to a witness, "Southside is a 'model [nursery] for persons interested in establishing centers to * * * observe the program, the equipment, the phyiscal plant, the general environment that is so important to training the young child' ". *Id.* This witness stated further "that Southside is not a 'babysitting organization' and that it has a 'very fine educational program' ". *Id.* The City produced no evidence to the contrary. We upheld the trial court's finding that Southside's property was used primarily for educational purposes and therefore exempt under § 183 of the Constitution.

The *Randolph-Macon* and *Southside Day Nursery* cases, though they are factually quite different and do not control this case, admittedly reflect a liberal construction of § 183 of the Constitution.

But they can no longer be regarded as the high water mark. Today the Court not only holds that the operation of a summer camp is primarily for educational purposes or purposes incident to education, but it also holds that a summer camp that contributes about 24% of its owner's (the College's) net income is not a source of revenue or profit.

The Court justifies today's extension by the judicially declared rule that a liberal construction should be given to the exemption provisions of the Constitution, a rule announced in *Commonwealth* v. *Lynchburg YMCA*, 115 Va. 745, 80 S.E. 589 (1914), and repeated in later cases including *Richmond* v. *Southside Day Nursery Assn*, *supra*. That rule was considered and rejected, however, by the Commission on Constitutional Revision. *Commission on Constitutional Revision, Report: The Constitution of Virginia* 306 (1969).

Rather than extending past decisions, I believe we should heed the will of the people. Following the Commission's recommendation, they expressed their will in Article 10, § 6(f), of the Constitution of Virginia effective July 1, 1971: "Exemptions of property from taxation as established or authorized hereby shall be strictly construed." Believing we should at least refrain from further liberalizing our construction of § 183 of the present Constitution, I would deny exemption to the Camp property.