# Richmond.

## BOARD OF SUPERVISORS OF NANSEMOND COUNTY v. CITY OF NORFOLK.

January 16, 1930.

Absent, Chichester, J.

The opinion states the case.

*W. P. Lipscomb*, for the plaintiff in error.

*James H. Corbitt* and *R. W. Peatross*, for the defendant in error.

Holt, J., delivered the opinion of the court.

This is a proceeding brought to set aside certain assessments of land for taxation in the county of Nansemond, owned by the city of Norfolk. That city asks that it be relieved therefrom and released from all taxation, State and local, thereon, so long as it is held for city purposes.

The petitioner prevailed in the trial court, and from its order the county has appealed.

In 1919, there was a shortage of water in Norfolk and the situation had become serious. What is known in the record as Lake Prince appeared available to meet this emergency, and its development was undertaken. A dam was there built and about 900 acres were flooded, besides which the city purchased about 2,000 additional acres for the protection from pollution of waters so impounded. The land bought consisted of four farms and the following statement shows from whom they were bought, the prices paid, and rents received:

B. G. and Alice M. Ferguson property: Purchase price, $50,000.00. Total rents received for the years 1921 to 1926, inclusive, $2,674.48. Average yearly rent over period of six years $445.75, or a return of less than one per cent on the purchase price.

J. B. Matthews property: Purchase price, $17,-852.57. Total rents received for the years 1921 to 1926, inclusive, $1,675.00. Average yearly rent over period of six years $279.16, or a return of about one and five-hundredths per cent on the purchase price.

Nathaniel J. Oliver property: Purchase price, $20,-000.00. Total rents received for the years 1921 to 1926, inclusive, $2,775.00. Average yearly rent over

period of six years $462.50, or a return of about two and three tenths per cent on the purchase price.

Virtley A. Nelms property: Purchase price, $20,-000.00. Total rents received for the years 1921 to 1926, inclusive, $1,500.00. Average yearly rent over period of six years $250.00, or a return of one and twenty-five hundredths per cent on the purchase price.

Total cost of the four properties, $107,852.57. Total rents received in six years therefrom, $8,624.48. Average total yearly rent over period of six years, $1,437.41, or about one and three tenths per cent on the total purchase price, against which rentals must be charged the cost of repairs and upkeep.

These lands have been assessed for taxation by the county upon the theory that they are not used wholly and exclusively for municipal purposes, but have been during all of the intervening years leased for profit. To sustain this claim, section 183 of the Constitution is relied upon.

The following excerpts from this section, as they appear in the Constitution of 1902 and in its revision of 1928 (see Acts 1928, chapter 46), are pertinent:

*Constitution of 1902.* .
"Section 183. Property exempt from taxation.— Except as otherwise provided in this Constitution, the following property and no other, shall be exempt from taxation, State and local; but the General Assembly may hereafter tax any of the property hereby exempted save that mentioned in sub-section (a):

*Constitution as Amended 1928.*
"Section 183. Property exempt from taxation.— Unless otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes:

"(a) Property directly or indirectly owned by the State, however held, and property lawfully owned and held by counties, cities, towns, or school districts used wholly and exclusively for county, city, town, or public school purposes, * * *."

"(a) Property owned directly or indirectly by the United States, the Commonwealth or any political subdivision thereof, * * *"

"(g) * * * and whenever any building or land, or part thereof, mentioned in this section and not belonging to the State, shall be leased or shall be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town; * *"

"(g) * * * Whenever any building or land, or part thereof, mentioned in this section, and not belonging to the State, shall be leased or shall otherwise be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town."

In this same section like exemptions, subject to like limitations, are extended to incorporated institutions of learning and to religious associations, such as the Young Men's Christian Association, etc.

In its petition for a writ of error the county claims (1) that the lands involved are leased for profit and so are taxable under this constitutional provision; and (2) that the reservations are excessive.

In support of the first proposition, these cases are cited and relied upon: *Commonwealth* v. *Trustees of Hampton Normal & Agricultural Institute*, 106 Va.

614, 56 S. E. 594, 597; *Commonwealth* v. *Lynchburg Young Men's Christian Association*, 115 Va. 745, 80 S. E. 589, 592, 50 L. R. A. (N. S.) 1197; *Commonwealth* v. *City of Richmond*, 116 Va. 69, 81 S. E. 69, 73 L. R. A. 1915A, 1118.

They do not sustain the county's claim. The Hampton Institute case dealt with property owned by an industrial school and not by a city. That school leased a tract of forty-three acres of land, not used for any educational purposes whatever, to the National Soldiers Home. It leased a number of houses upon other lands to various persons for fixed rentals and a strip of land thirty feet wide through a portion of its property to a street railway. It also owned another farm, called the "Hemenway Farm," which is operated as a dairy farm, and in addition to its use for purposes of instruction sold to persons not connected with the school dairy products valued at several thousand dollars a year. The court was of opinion that the Hemenway farm could not be taxed but that the other properties were subject to such assessments. These other properties, when leased, were in no sense used for school purposes but for profit only. The Hemenway farm was used for school purposes and its excess productions were, as an incident to such use, sold to outsiders, just as the farms in judgment are used for municipal purposes, namely, for the protection from pollution of the city's water supply, and the profits from them were but an incident which did not interfere with this use. It follows that this case does not sustain the county's claim, but tends strongly to support the city. Judge Keith, in his opinion, said:

"We think it cannot fairly be claimed that houses and lots that are rented out for profit by an educational institution—for instance, the tract of forty-three acres

of land rented to the National Soldiers'. Home for $4,000.00 a year, and the thirty-foot strip of land rented to the Hampton Roads Railway and Electric Company for $750.00 a year—are all, or either of them, in any proper or just sense, used exclusively for educational purposes. They are leased by the institute, just as any other landowner would lease them, for the revenue which it gets out of them; and they are used exclusively for the purposes of the lessees, none of which are in any sense educational.

"We agree with counsel for plaintiffs in error that it is the use to which property is put, and not the use to which profits which are realized from such property are put, which determines whether it shall be exempt or not.

\*    \*    \*    \*    \*    \*

"In conclusion, we are of opinion * * * that the 'Hemenway' farm, which is used as a model dairy farm, comes within the provisions of the charter of the institute which authorizes instruction in the best mode of practical industry in its application to agriculture, and is not liable for taxation, though as an incident to its operation as a model farm its surplus produce is a source of revenue; the court being unable in such case, with exactness, to define to what extent and to what proportion of its value the 'Hemenway' farm is to be considered as devoted directly to educational purposes, and what proportion of its value is to be regarded as a source of revenue under the law as it now stands."

In the *Lynchburg Y. M. C. A. Case*, it appears that the association owned in that city a five-story building. The third and fourth floors contained dormitories or bed rooms, forty-five in number, which are rented to its members. The court was of opinion that this use was incidental to the purposes of the association, and

did not subject it to taxation, and in support of that conclusion cited *Emerson* v. *Milton Academy*, 185 Mass. 414, 70 N. E. 442, and said that where the occupation and use were to produce income, taxes might be assessed, "but where the dominant purpose in the occupation and use of the property was directly accomplished, it was within the provision of the statute. The fact that incidentally there were results from the use of the property which would not entitle it to exemption was held to be immaterial, so long as the dominant purpose of the occupation was within the statute."

■ So in the case in judgment, it is perfectly apparent that the city has not used these farms for profit except incidentally. Such incidental use has brought to it a gross revenue of about one and three tenths per cent per annum on its investment. Certainly, the city would not have made such an investment had it not been made in the discharge of some municipal duty. A city not only has the right to protect its water supply but it must protect it. 40 Cyc. 767. It is the settled policy of the State and of all States to encourage any reasonable exercise of this right and power.

■ Adverting for a moment to the rule that exemptions from taxation are to be construed strictly, we may ponder with profit what was said by Judge Prentis in *Commonwealth* v. *Smallwood Memorial Institute*, 124 Va. 142, 97 S. E. 805, 806: "It may be said in this case, as Buchanan, J., said in *Commonwealth* v. *Lynchburg Y. M. C. A.*, 115 Va. 747, 80 S. E. 589, 50 L. R. A. (N. S.) 1197: 'It is insisted by the Commonwealth that the provision of section 183 of the .Constitution must receive a strict construction. The general rule is·that provisions exempting property of individuals or private corporations from taxation must be strictly construed, taxation of such property

being the rule and exemption from taxation the exception. One of the reasons for this is, that all such persons should bear their full share of the burdens of taxation, and that lessening the burden of one increases the burdens of others. But as the policy of the State has always been to exempt property of the character mentioned and described in section 183 of the Constitution, it should not be construed with the same degree of strictness that applies to provisions making exemptions contrary to the policy of the State, since as to such property exemption is the rule and taxation the exception.' "

This same reasoning applies with equal force to the facts in judgment. No municipal functions are of more importance than sanitation and the preservation of the people's health.

In *Commonwealth* v. *City of Richmond, supra,* it appeared that the city derived from the sale of water to those who lived beyond its limits something over $6,000.00. The court held that this was *de minimis* and did not subject the water works to taxation. In the course of his opinion, Judge Cardwell said: "The principle sustained by the 'weight of authority' as well as elementary writers is that all property lawfully owned and held by cities and towns for governmental purposes, though a source of revenue or profit, which was paid into the city treasury and used for municipal purposes by the city, the dominant purpose in the use having direct reference to the purposes for which the property is authorized by law to be owned and held, and tends immediately and directly to promote those purposes, is exempt from State taxation."

And further: "The exemptions from taxation provided for by section 183 of the Constitution of property lawfully owned and held by a city wholly and ex-

clusively used for city, county, town, charitable, educational, or religious purposes, are not defeated or annulled by the mere fact that revenue or profit, over and above the cost of maintenance is, realized from the property. If the use made of the property so held has direct reference to the purposes for which it is by law authorized to be owned and held, and tends immediately and directly to promote those purposes, then its use is within the provisions exempting the property from taxation, although revenue or profit is derived therefrom as incident to such use. *Commonwealth* v. *Lynchburg Y. M. C. A.*, *supra*, and authorities cited, among them the case of *Commonwealth* v. *Hampton Inst.*, 106 Va. 614, 56 S. E. 594."

■ Here the purposes for which the property was purchased and the use made of it tend directly to promote the health and well-being of the citizens of Norfolk. These exempt it from taxation, and this exemption is not taken away because it incidentally brings in revenue or profit. Taken as a whole, the water works of Norfolk are barely self-sustaining and were for a long time operated at a steady loss.

Mr. Walter H. Taylor, a witness of wide experience, said: "The reason that we permit cultivation is that it will help rather than hurt the land and keep it from growing up in weeds and by grazing for stock reduce the wash from the land into the reservoir of sediment." Even if we assume that he is mistaken in this, it is a mistake of judgment and the city in using the lands for the purposes for which they were purchased cannot be expected to do more than to exercise its good judgment.

■ So long as the dominant purposes for which the lands were purchased are maintained, incidental uses which serve in some small degree to lessen the city's burdens although foreign to, but not in deroga-

tion thereof, and which do not change the character of the holding, are not sufficient to bring them within the exception noted in the Constitution, and to make them a subject for taxation. Surely a city might permit timber to be culled from its watershed without subjecting the watershed itself to taxes.

Again it is said that the holding is excessive. That claim is against the evidence, and in the absence of evidence, except in a flagrant case, courts would be slow to uphold such a contention. The judgment of those charged with conservation of the purity of water to be used for domestic purposes is not readily to be overborne.

During the progress of this case it developed that 100 acres of land, it being a part of the Matthews tract, was not on the water shed at all. It, the trial court said, might be taxed, and the right to tax the residue of the city's holdings was denied. We have not deemed it necessary to go for authority beyond the cases relied upon by counsel. They show that it has no claim.

The judgment appealed from is plainly right and is affirmed.

*Affirmed.*