# Richmond

## CITY OF NEWPORT NEWS v. WARWICK COUNTY.

November 17, 1932.

Present, Campbell, C. J., and Holt, Epes, Browning and Chinn, JJ.

ON PETITION FOR REHEARING

Richmond, January 25, 1933.

572

The opinion states the case.

*R. M. Lett, S. R. Buxton* and *James H. Corbitt,* for the plaintiff in error.

*Joseph D. Parker, Charles C. Berkeley* and *M. I. Armistead,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

Acting under the authority given by its charter, the general law and a special act of the General Assembly approved March 25, 1926 (Acts 1926, page 880, c. 530), in particular, the city of Newport News, by deed effective July 1, 1930, purchased from the Newport News Light and Water Company and the Old Dominion Land Company the entire water works plant and system then owned and operated by the Water Company, including the auxiliary property owned by the Old Dominion Land Company. The property so purchased embraced three reservoirs, known as the Lee Hall reservoir, Skiff's creek reservoir, Howard's Mill reservoir, Young's mill pond and Causey's mill pond, the water sheds of the water works system and all distribution mains, pipes and rights of way therefor throughout the municipality and counties where they were then located, and the power plant or plants, filtration plant or plants, service meters, hydrants, fire plugs and all apparatus and equipment appurtenant to the system, owned by the companies or either of them.

Section 1 of the special act authorizes the city to improve or extend the system by the purchase of additional lands, or the construction of additional reservoirs, power plants, filtration systems, water mains and such other improvements as may be necessary for the purpose of supplying pure potable water in adequate amounts to the consumers thereof.

Section 2 provides that, upon the purchase of the water works plant by the city of Newport News, "the said city shall continue to serve all corporations or persons now being supplied with water in the territories aforesaid by said water works system in York county, James City county, Warwick county, Elizabeth City county, the city of Hampton, the town of Phoebus and the village of Kecoughtan." It also authorizes the city council of Newport News to extend the water mains of the system so as to supply additional consumers of water in the above named and other territories.

Sections 3 and 4 authorize the city to purchase, lease, or acquire by the exercise of the power of eminent domain, any additional lands that may be necessary for the operation of said water works plant not to exceed fifteen thousand acres at any one time; and in its discretion to sell, lease or otherwise dispose of any of its lands or other properties under certain conditions and limitations therein set forth, the proceeds of any such lease, sale or other conveyance thereof to be "applied solely to the extension, betterments or renewals of said plant, water sheds or system, or to the retirement of the principal of any indebtedness incurred or assumed by the city of Newport News under the provisions of this act in the purchase of said water works plant and system." Section 4.

Section 5 empowers the city of Newport News to "charge and enforce the payment of reasonable rates for the supply of water to all consumers in the territories aforesaid, the proceeds whereof shall be applied solely to the operation, maintenance and necessary extension of the water-works plant and system, and to the payment of the bonds issued hereunder, and said city, in the operation of its said water-works plant and system, shall succeed to and enjoy all the powers and rights and privileges appertaining thereto, now possessed by the Newport News Light and Water Company and the Old Dominion Land Company within the territories aforesaid, and all rights, privileges and immunities allowed or granted by general law to cities purchasing or owning water supply plants or systems."

Sections 7 and 8 authorize the city to issue bonds to provide funds for the purchase of said plant and system under the terms and conditions therein provided, which shall be the general obligations of the city of Newport News, for which the full faith and credit of the city shall be irrevocably pledged, and in case the revenues from the plant are insufficient for the payment of the principal and the interest as the bonds become due and payable, then the city council is required to levy annual taxes upon the taxable property

of the city for the payments thereof. There are other provisions in relation to the issuance and payment of said bonds and existing liens, and by section 13 the city council is given the discretion to provide by ordinance for the establishment of a commission, which "shall be vested with such powers as to the management of said water-works system, including the fixing rate therefor, as said council may deem proper."

Section 14 provides: "This act shall be construed as an additional grant of power to the city of Newport News, supplementary to the general law of the State relating to the rights and privileges of cities purchasing or owning water supply plants or systems."

Since its purchase the city, through its water works commission, has operated the water works plant as a unified system, in supplying water to itself for all municipal purposes, and to the consumers residing in outside territories previously served by the water company, in conformity with the provisions of the general law and the special act referred to.

It appears that Lee Hall reservoir (at which the principal buildings and machinery used in the operation of the water works system are located) and Skiff's Creek reservoir are located in Warwick county. The Howard's Mill reservoir, its water shed and a considerable area of Lee Hall reservoir water shed are located in York county. The Skiff's Creek and Howard's Mill reservoirs are connected with Lee Hall reservoir by pipe lines, through which their waters are forced by pumps located at each reservoir into Lee Hall reservoir, from which the principal distribution mains of the system extend.

On June 21, 1930, the city of Newport News filed its application in the Circuit Court of Warwick county, asking for the correction and cancellation of certain assessments for local taxation for the year 1929, upon its water works properties situated in Warwick county, upon the ground that the properties were assessed beyond their fair market

value, and that all of its properties are exempt from taxation under section 183 of the State Constitution, as revised and amended in 1928 (see Acts 1928, c. 46). On July 11, 1930, a similar application was filed in the Circuit Court of York county, asking for relief from the assessments against the properties of the city located in that county. By consent of all parties, the applications were heard jointly by Honorable Robert F. Hutcheson, with the agreement of counsel that the evidence in either case is to be considered in each case so far as applicable.

There were numerous demurrers and pleas filed in both cases, which were overruled by the court, and to which it is unnecessary for us to refer.

After hearing the cases on the merits, the trial judge refused the relief prayed for and dismissed said applications by final orders entered in the Circuit Court of Warwick county on April 11, 1931, and in the Circuit Court of York county on April 15, 1931, respectively. Upon the petition of the city of Newport News, writs of error were allowed to each of said judgments, which brings the proceedings of both cases before this court for review.

Broadly speaking, the questions presented by the petition are: (1) the construction to be placed upon section 183 of the Constitution, as amended in 1928, with reference to the exemption from taxation of municipally owned property, and (2) the application of that construction to the facts of the cases embraced in the record.

To clarify the subject it should be said that the liability of the city of Newport News to taxation upon its water works system for the year 1927 was determined in the cases of *Warwick County* v. *City of Newport News,* 153 Va. 789, 151 S. E. 417, and *York County* v. *City of Newport News,* 153 Va. 824, 151 S. E. 428, and the taxes for that year and for 1928 have been paid.

The decisions in those cases were based upon the provisions of section 183 of the Constitution prior to the amendment of that section in 1928. In the instant case relief is

sought from the assessment of the same property by the counties for the year 1929, it being now contended by the city that under section 183, as amended, all of the properties comprising its water works system, both real and personal, are exempt from taxation.

The amendments relied on by the city in its claim for absolute exemption can be best shown by a comparison of the provisions of that section, so far as they are pertinent, prior and subsequent to the amendments.

| *Constitution of 1902.* | *Constitution as Amended in 1928.* |
|---|---|
| "Section 183. Property exempt from taxation.—Except as otherwise provided in this Constitution, the following property and no other, shall be exempt from taxation, State and local; but the General Assembly may hereafter tax any of the property hereby exempted save that mentioned in subsection (a): | "Section 183. Property exempt from taxation.—Unless otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes: |
| "(a) Property directly or indirectly owned by the State, however held, and property lawfully owned and held by counties, cities, towns, or school districts, used wholly and exclusively for county, city, town or public school purposes, * * *." | "(a) Property owned directly or indirectly by the United States, the Commonwealth or any political subdivision thereof, * * *. |
| "(g) * * * and whenever any building or land, or part thereof, mentioned in this section, and not belonging to | "(g) * * * * "Whenever any building or land, or part thereof, mentioned in this section, and |

the State, shall be leased or shall be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town; * * *."

not belonging to the State, shall be leased or shall otherwise be a source of revenue or profit all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town. But the General Assembly may provide for the partial taxation of property not exclusively used for the purposes herein named. * * *"

Following subsection (a) above noted, in this same section (183) there are six other subsections, designated (b), (c), (d), (e), (f), and (g), respectively, exempting from taxation various other specifically defined classes of property, subject to certain limitations therein set forth.

The contention of the city that all of its water works property is now exempt from taxation is primarily based upon the omission from subsection (a), as amended, of the qualifying words, "used wholly and exclusively for county, city, town or public school purposes," as contained in the same subsection in the Constitution of 1902. It is contended that the elimination of these qualifying words signified the intention to change the Constitution so as to place property owned by cities and other political subdivisions of the State in the same class as State owned property, which is unqualifiedly exempt; and that the subsequent provision in section 183 (subsection g), that "Whenever any building or land, or part thereof, mentioned in this section, and not belonging to the State, shall be leased or shall otherwise be a source of revenue or profit, all of such buildings and land shall be liable to taxation as other land and buildings in the same county, city or town," has no reference to

any of the property mentioned in subsection (a), as amended.

This claim is predicated mainly upon the theory that, although the "source of revenue or profit" clause, above quoted, remains practically unchanged by the amendment, this court, in construing section 183 before it was amended, has uniformly held that the sole test of the right of municipally owned property to exemption from taxation was the use to which the property was put; and the qualifying words, "used wholly and exclusively," etc., having been left out of the revised section, it necessarily follows that the test of exemption now depends, as in the case of property owned by the State, entirely upon *ownership*, regardless of the *use*.

It must be conceded that if subsection (a), as it now stands, is unqualified by any other constitutional provision, property owned by cities and other "political subdivisions" would stand on the same footing as other classes of property mentioned in that subsection, *i. e.*, property owned by the United States and the Commonwealth. The real question is, therefore, whether the subsequent provision in section 183, quoted above, was intended to apply to the property mentioned in all preceding subsections, including (a), or only to subsection (g) and the other subsections containing qualifying clauses, as counsel for the city contend.

The question has been elaborately argued, and many authorities cited in the briefs, embodying sound rules of construction, which we find inapplicable or of little assistance in the determination of the immediate question before us; but those chiefly relied on by the city are *Black* v. *Sherwood*, 84 Va. 906, 6 S. E. 484, 485; *Norfolk, Portsmouth & Newport News Co.* v. *City of Norfolk*, 105 Va. 139, 52 S. E. 851; *Commonwealth* v. *City of Richmond*, 116 Va. 69, 81 S. E. 69, L. R. A. 1915A, 1118; *Commonwealth* v. *Ferries Co.*, 120 Va. 827, 92 S. E. 804; *Board of Supervisors of Nansemond County* v. *City of Norfolk*, 153 Va. 768, 151 S. E. 143;

and *Warwick County* v. *City of Newport News,* 153 Va. 789, 151 S. E. 417.

The written opinion of the learned trial judge contains a clear and able analysis of several of the above decisions which we wish to acknowledge as helpful.

Counsel for the city place great reliance upon the case of *Black* v. *Sherwood, supra,* which is frequently referred to in the course of their argument. In that case the city of Norfolk attempted to collect taxes which had been assessed against a lot of ground situated in that city, owned and used by Norfolk county and the city of Portsmouth as a landing place for their ferry across Elizabeth river, between Norfolk and Portsmouth. The owners of the lot resisted payment of the taxes on the ground that it was exempt from the payment of any taxes under the provisions of an act of the General Assembly (Acts 1881-2, page 382, c. 61), enumerating what real and personal property should be exempt from taxation, and specifically including therein "real estate belonging to any county, city or town." This statute, which was carried into section 457 of the Code of 1887, concludes with this sentence: "Provided, however, that nothing herein contained shall be construed to exempt from taxation any part of a lot or building used for any private purpose, or for profit; but where a part of the property or its proceeds is used for charitable or school purposes, then, to that extent, the same shall be exempt from taxation, and the chief officers of such association shall be required to make oath as to what part, if any, of such revenues of the association is devoted to private purposes or profit."

The city of Norfolk claimed that the lot referred to was not exempt because its use was a source of profit, and therefore, under this last provision of the statute, it was taxable. It was held by the court that the provision above quoted "has no reference to county or city property and that the law distinctly exempted from taxation the real estate of a city or county, for similar reasons that the real estate of

the Commonwealth is exempted, the former being but political subdivisions of the State, and such property stands related to the Commonwealth as its own. But whatever may be the reasons of the legislature, this property is exempt by the plain language of the law from taxation, and this is in accord with the ancient usage of the Commonwealth."

In 1896 section 457 was amended (Acts 1895-6, page 218, chapter 178) by including in its enumeration of exemptions real estate belonging "to the Norfolk county ferries, so long as the same is used as a highway, whether leased out for profit or not;" and also by adding the following additional proviso: "and provided further, that although the land upon which such buildings or improvements are located shall be exempt from taxation under this section, nothing herein contained shall be construed to exempt from taxation the buildings or improvements on any real estate belonging to any county, city or town, which are leased out for profit."

It is earnestly insisted by learned counsel for the city that the proviso clause at the end of the statute construed in *Black* v. *Sherwood,* declaring that "nothing herein contained shall be construed to exempt from taxation any part of a lot or building used for private purposes, or for profit," etc., following the absolute exemption given "real estate belonging to any county, city or town," in the body of the act, presented a question of construction similar to that involved in the instant case; and that the reasons given by the court for its decision apply with equal force to the question of construction now before us.

*Black* v. *Sherwood* is the only reported case which construes section 457 of the Code, as it stood at that time. While the soundness of the decision in that case does not seem to have ever been questioned, as we interpret it, the court seems to have based its conclusion more largely upon the "ancient usage" and policy of the Commonwealth with reference to the exemption of property owned by "political subdivisions" of the State, than upon the "plain language

of the law." But however this may be, we do not think the decision controls the construction of the language now found in the Constitution, and in so far as it may be considered as applicable to the question before us, we feel compelled to say the decision must be overruled.

After *Black* v. *Sherwood* and the amendment of section 457, came the Constitution of 1902, which undertook to deal with the whole subject of exempt property in section 183, and superseding all prior legislative enactments and decisions in relation thereto. It divided such property into seven distinct classes, adding to the exemption of "property lawfully owned and held by counties, cities, towns, or school districts," placed in class (a), the qualifying words, "used wholly and exclusively for county, city, town, or public school purposes;" and, after enumerating all the other exempt classes of property, added the provision as to buildings and land used as a "source of revenue or profit;" which, as said by the trial judge, "is the bone of contention in this case."

Then followed the cases of *Norfolk, Portsmouth & Newport News Company* v. *City of Norfolk,* 105 Va. 139, 52 S. E. 851, decided March 1, 1906; *Commonwealth* v. *Richmond,* 116 Va. 69, 81 S. E. 69, L. R. A. 1915A, 1118, decided March 12, 1914; and *Commonwealth* v. *Ferries Co.,* 120 Va. 827, 92 S. E. 804, decided June 14, 1917. These cases are relied on as citing *Black* v. *Sherwood* as authority.

It seems that the first-named case, though decided after the Constitution of 1902 took effect, arose under section 457 of the Code as amended in 1896. It appears that the county of Norfolk and the city of Portsmouth were joint owners of the steam ferries plying between the city of Norfolk and the city of Portsmouth, and the city of Norfolk and the town of Berkley, "known as the Norfolk county ferries." By authority of law these ferries were leased by the owners to the plaintiff and the only question in the case involved the right of the city of Norfolk to impose a *license tax* on the business of the lessee operating the ferries. The only

reference to *Black* v. *Sherwood* was the following observation made by the court in stating the case: "It is conceded that under section 457 of the Code of 1887, as amended by an act approved January 28, 1896 (Acts 1895-6, page 218, chapter 178 [Va. Code 1904, page 239]), section 488 of the Code of 1887 (Va. Code 1904, page 250), and the case of *Black* v. *Sherwood*, 84 Va. 906, 6 S. E. 484, the real and personal property leased in this case are exempt from taxation." It was then held that, "There is nothing in any of the Acts of Assembly relied on which expressly or by necessary implication exempts the lessee of property, which is itself exempt from taxation, from the payment of a license tax for conducting a business on or with such property."

The question decided in *Black* v. *Sherwood* was not involved in the above case, and even if it had been so involved, property belonging to "the Norfolk county ferries" had been specifically exempted from taxation by the subsequent amendment to the statute (Code 1887, section 457) in 1896. It therefore seems manifest that *Black* v. *Sherwood* was neither approved nor relied on by the court as authority for its decision, but was only cited in the *concessum* of counsel, which was so stated merely to clarify the issue, and was not necessary to the decision of the case.

In *Commonwealth* v. *Ferries Co.*, 120 Va. 827, 92 S. E. 804, 806, the legislature had passed an act in 1912 authorizing the Auditor of Public Accounts to draw his warrant in the company's favor on the treasurer of Norfolk city for $992.40, which the ferry company had paid for taxes assessed on its property by the State, adjudged by the Circuit Court of Norfolk to be illegal. It was contended by the Commonwealth that the act violated section 63 of the Constitution, prohibiting the enactment of any local, special or private laws refunding money lawfully paid into the treasury of the State or any political subdivision thereof; and that only the Circuit Court of the city of Richmond had jurisdiction to adjudge the tax to be illegal.

After disposing of the constitutional question, the court said that it was not denied that the tax was illegally levied; that the legislature had itself determined the taxes were illegally collected, and had not transcended its powers in doing so; and, therefore, a prior adjudication by the court was unnecessary. After thus disposing of the question, Judge Whittle added: "Yet if there was any merit in the point stressed by the plaintiff in error that a prior adjudication by a court that the Ferries Company was not taxable was necessary to warrant the act of 1912, the contention is answered by the cases of *Black* v. *Sherwood,* 84 Va. 906, 6 S. E. 484, and *Norfolk, P. & N. N. Co.* v. *City of Norfolk,* 105 Va. 139, 52 S. E. 851, holding that the property of the company was non-taxable."

As already pointed out, *Norfolk, etc., Co.* v. *City of Norfolk* only involved the question of whether the city of Norfolk had the right to impose a license tax on the business conducted by the lessee and had no reference to the taxation of the property which had been exempted by statute; and *Black* v. *Sherwood* was decided before the Constitution of 1902, and only undertook to construe section 457 of the Code of 1887, before the amendment of 1896. It therefore seems clear to us that neither of the cases last mentioned have any application whatever to the case now being discussed; and that the paragraph above quoted was entirely unnecessary to the decision of the case, and to be considered as purely *obiter.*

We agree with the judge of the trial court when he says: "I am unable to see that these ferry cases throw any light on the question of whether the qualifying provision in section 183 of the Constitution of 1902, denying exemption to land or buildings used as a source of revenue or profit, applies to municipal corporations."

In *Commonwealth* v. *City of Richmond,* 116 Va. 69, 81 S. E. 69, L. R. A. 1915A, 1118, the Commonwealth undertook to levy State taxes for the year 1912 on the valuation of the city's auditorium building, market buildings, water

works and gas works, upon the claim that the city habitually received a net revenue largely in excess of the cost of maintaining these utilities, all of which was covered into the treasury of the city and used for its general purposes. It also appeared that the city derived a revenue from the sale of water and gas to outside consumers which, in comparison with the total gross revenues derived from those utilities, was considered *de minimis* and as not requiring consideration. Briefly stated, the only question in the case was whether the use made by the city of the properties sought to be taxed rendered those properties, or any of them, liable to taxation under the provision of section 183 of the Constitution exempting from taxation property owned and held by a city "used wholly and exclusively for city purposes;" and the opinion of the court deals only with that question.

Counsel for plaintiff in error also rely on this case as approving the decision in *Black* v. *Sherwood.* As far as we can see, however, the latter case was cited simply to maintain the uncontroverted principle that a municipality is but a subdivision of the State, and property belonging thereto stands related to the Commonwealth as its own.

The last two cases cited by counsel in support of their contention are *Board of Supervisors* v. *City of Norfolk,* 153 Va. 768, 151 S. E. 143, and *Warwick County* v. *City of Newport News,* 153 Va. 789, 151 S. E. 417, 423. Both of these decisions, like that in *Commonwealth* v. *City of Richmond,* deal with the construction of subsection (a) of section 183 of the Constitution prior to its amendment in 1928, as applied to the facts of each particular case.

In *Board of Supervisors* v. *Norfolk,* the city of Norfolk sought to set aside an assessment made by Nansemond county of lands held by the city to protect the city's water supply from pollution. It seems that the city received a small income from the rentals of these lands, amounting to about one and three-tenths per cent. on the total purchase price; and the county assessed them for taxation upon the

theory that they were not "used wholly and exclusively" for city purposes. It was held by this court, speaking through Justice Holt, that the purposes for which the property was purchased, and the use made of it, directly tend to promote the health and well-being of the citizens of Norfolk. These exempt it from taxation, and this exemption is not taken away because it brings in "revenue or profit" as incident to said use.

In *Warwick County* v. *Newport News*, the county assessed taxes for the year 1927 upon the identical property involved in this case, and the question arose whether the property was exempt under the provisions of subsection (a) of section 183 of the Constitution. It appeared that more than one-third of the total revenue received by the city from the operation of its water works was derived from the proceeds of water furnished outside consumers. This court, speaking through the late Chief Justice Prentis, denied the exemption on the ground that the property was not "used wholly and exclusively" for city purposes, within the meaning of the above constitutional provisions, as therein construed.

To repeat, the contention of counsel for the city is that the "source of revenue or profit" clause, as to buildings and land in the latter part of section 183, does not apply to subsection (a), and, therefore, the elimination of the qualifying words from that subsection, as originally framed, was intended to change the law so as to render property owned by all subdivisions of the State entirely exempt from taxation. It is argued that these last three cases, particularly, support this proposition because it was held in each of them that the question of whether city owned property was taxable or non-taxable depended solely upon the use to which it was put, and the other provision referred to was not considered at all in the determination of the question.

It is quite true that all these decisions were based upon the construction of subsection (a), as it then stood, with-

out reference to the subsequent provision noted. We are also disposed to agree that the later provision in section 183 did not apply to property mentioned in subsection (a) before that subsection was revised. That subsection, which was self-operating, expressly exempted *all* property owned by counties, cities, towns and school districts when used "wholly and exclusively for county, city, town and public school purposes," without any other qualification or limitation. The words "used wholly and exclusively" have been construed to have a fixed and definite meaning, which of itself renders such property taxable or non-taxable, according to its use. We, therefore, think it is hardly to be supposed that the Constitutional Convention of 1902 intended, at the same time and notwithstanding the specific terms of the exemption in subsection (a), to further qualify the exemption of property owned by counties, cities, towns and school districts by making "buildings and land" belonging to those political subdivisions taxable when leased or *otherwise* a source of revenue or profit, regardless of the use to which they may be put.

For these reasons it seems obvious why the buildings and land clause was not considered in the above mentioned decisions, in which the construction of subsection (a), as related to the exemption from taxation of city owned property, was involved. With the removal of the express and unqualified terms of exemption formerly contained in subsection (a), however, a different question is presented. With that language left out, there is no longer in section 183 of the Constitution any qualifying provision as to the exemption of property belonging to political subdivisions, except the provision as to the taxation of buildings and land which "shall be leased or shall otherwise be a source of revenue or profit." The language of that provision is clear and explicit. It expressly applies to "any building or land, or part thereof, mentioned in this section" (183), and is unqualified except as to buildings and land belonging to the State. It is broad enough to apply to all classes of exempt

property mentioned in the section to which no other provisions inconsistent therewith apply.

There also appears to be a good reason for eliminating the so-called qualifying words from subsection (a) at the time the Constitution was revised and amended. In all the cases in which this subsection was construed, it was uniformly held that (under the liberal construction to be given the words "used wholly and exclusively") if the property belonging to a city had been used for its own public purposes, and there had been no other substantial use of it for private profit, then it was exempt from taxation; but if the outside use was a source of profit which is substantial and not incidental to the use made of it by the city for its own governmental purposes, then it is taxable. In view of this construction it seems quite evident that the framers of the revised Constitution did not omit the qualifying language from subsection (a) with the intention of changing the policy of the State, as claimed by counsel, but for the reason that, as construed, this language was practically of the same import and effect as the subsequent "source of revenue or profit" provision in section 183, and was therefore, to some extent at least, superfluous; the only substantial difference being, that whereas the qualifying provision in subsection (a) applied to all property owned by counties, cities, towns and school districts, the subsequent provision applies only to buildings and land belonging to those political subdivisions of the State.

█ The foregoing review of the subject shows that it has long been the policy of the Commonwealth (certainly since *Black* v. *Sherwood*) to place limitations upon the exemption from taxation allowed its political subdivisions. We find no good reason to hold that the omission of the qualifying clause, "used wholly and exclusively," etc., as applied to the political subdivisions mentioned in subsection (a), showed an intention to entirely reverse this policy. On the other hand, we think the good reasons existing for the omission of this clause, taken in connection with the ex-

press language of the revised section (183), taken as a whole, clearly show the contrary. Our conclusion is that the "source of revenue or profit" clause in section 183 of the revised Constitution was intended to apply, and does apply, to "buildings and land" belonging to all political subdivisions of the State.

In addition to the reasons already given, we think this conclusion is sustained, as well said by the trial judge, by the following considerations:

"The report of the commission to propose amendments to the Constitution, made to the legislature of 1928, comments on the changes made in section 183, as follows: 'The section has been recast, largely in the interest of clearness and brevity.' It then calls attention to two minor changes. It says nothing, however, as to any change in the policy of the law with respect to the property in class (a).

"The amended Constitution, in its Rules of Construction (section 198 [see Acts 1928, c. 46]), provides: 'Omissions, having been often made for brevity, or because a part omitted was superfluous, do not necessarily imply a change of policy.'

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"The legislature of 1930, in adopting section 435-a of the Tax Code, has placed a construction on section 183 of the amended Constitution, which necessarily implies that property owned by political subdivisions of the State is not absolutely exempt."

Holding as we do that the "source of revenue or profit" provision as to buildings and land in section 183 of the revised Constitution is intended to apply to all property mentioned in subsection (a), not belonging to the State, we now have to determine how this provision is to be applied to the city's water works property in this case.

■■ As previously stated, under the qualifying provisions of subsection (a), as formerly framed, the test of exemption depended entirely upon the profits derived from the outside use of the utility. If the use was not incidental

and the revenues derived from it were substantial, it was taxable; if the use was incidental and the revenue negligible in proportion to the entire gross revenue, it was exempt. The provision now under consideration is, however, plain and unambiguous. As applied to the facts of this case, it can only mean that if any building or land owned by the city as a part of its water works system located in Warwick and York counties "shall be leased or shall otherwise be a source of revenue or profit," the same shall be liable to taxation as other buildings and land in those counties. The revenue or profit referred to is not limited to that derived from the outside use of the water works property, or any other particular use, but can only mean revenue or profit derived from all sources pertaining to its use, including that derived from the use by the city itself for its own municipal purposes, as well as that derived from the use of the system outside the city's limits. In other words, in order to determine whether any building or land in the instant case is taxable under this provision, it must be ascertained whether there has been a revenue (meaning net revenue) or profit derived from the total revenues of the entire water works property, of which said buildings or land is a part.

The city claims that no building or land of the water works property was leased or otherwise a source of revenue or profit in the year 1929. In this connection it should be said that as the statute requires all such property subject to taxation to be placed on the land books and delivered to the treasurer of the county before the first day of September of each year, the assessment of the property for the year 1929, from which relief is sought, could only have been based upon the revenue or profit derived from the operation of the property during the next preceding year, 1928. The salient point now is, how the question of profit should be arrived at.

In *Warwick County* v. *Newport News, supra,* in which the assessment for taxes for the year 1927 was involved, Chief Justice Prentis (evidently following the city's method

of accounting) said: "After setting aside a proper amount for depreciation estimated at $75,354.20 for the preceding period of eighteen months ending December 31, 1927, the revenue, after deducting operating expenses, showed a gross profit in excess of $99,000. Out of this profit $29,000 was used to retire twenty-nine serial bonds of $1,000 each, being a part of the purchase price of the property; $60,844.44 was expended for capital additions to the system, leaving a net balance over and above capital additions of $10,047.53."

In *Commonwealth* v. *City of Richmond, supra,* in which the same question was also involved, Judge Cardwell said this:

"(3) Water Works: Taking the year 1911, it appears that the total receipts were $254,122.48, while the city spent for maintenance, mains, meters, etc., $181,600.22, leaving a net income of $72,522.26, not taking into consideration, however, the interest on the outstanding indebtedness of the city chargeable against the said works, which interest on $1,370,000 of 4 *per cent* bonds outstanding in the year 1911, amounted to $54,800, leaving a net income of only $27,722, while if 4 *per cent* was charged on the whole cost of the works to and including that year, there would be a considerable annual deficit by reason of the operation of the said works."

As it seems to us, the only just and fair method of computation to determine whether the city of Newport News has derived a profit from the operation of its water works system is to deduct from its gross receipts: (1) All expenses of operation; (2) cost of maintenance of the plant, including all necessary replacements of machinery, mains, hydrants, meters, etc.; (3) the cost of all new additions in the way of land, buildings, machinery and other equipment, etc., which are necessary for the efficient operation and service of the plant and not directly productive of additional revenue; (4) the cost of extensions of mains and pipe lines which do not add to the earnings; (5) annual· interest charges on bonds issued for the purchase of

the plant; and (6) taxes paid for the previous year, if any. There may be other deductions allowable under special circumstances in addition to those above mentioned.

We do not think the city should be permitted to charge off any estimated amount on account of depreciation and at the same time be allowed the cost of maintenance and replacements. Any increase in the value of the property by replacing old property with new can better be taken into consideration in assessing the valuation of the same for taxation. It also appears manifest that reduction of the indebtedness against the property by payment of the principal of the bonds outstanding out of the earnings can only be regarded as profit.

In the case in judgment, we have been unable to find in the record the exact figures from which we can determine by the above method of computation whether the city derived a profit from the operation of the water works system in the year 1928. There is filed with the briefs a balance sheet for the year 1929, and a consolidated balance sheet for the years 1927, 1928 and 1929, but these afford us no assistance for the purpose. There is also much parol testimony on the subject, in which certain reports and financial statements are referred to, but which are not filed with the printed record in the case. We do gather from the record, however, that for the year 1928, after deducting unspecified sums for depreciation, operating expenses, interest on bonds, and other undesignated items, the net profit amounted to $77,892.76, subject to a deduction for taxes. Judging also by other evidence in the record, we think it may fairly be inferred that, when calculated upon the proper basis, the city received a sufficiently substantial profit from the entire system for the year in question to render the property liable to taxation for the year 1929, under the provisions of section 183 of the Constitution as it now stands.

It is next claimed by the city that under the provisions of section 5 of the special enabling act of 1926, the

city is not allowed to make a profit for its own use. It is argued that, unlike the operation of the water works of a public service corporation, "no dividend can be declared, or a dollar of the proceeds from the sale of water go into the treasury of the city of Newport News."

Section 5 reads: "The city of Newport News shall have the power to charge and enforce the payment of reasonable rates for the supply of water to all consumers in the territories aforesaid, the proceeds whereof shall be applied solely to the operation, maintenance, and necessary extension of the water works plant and system and to the payment of the bonds issued hereunder."

This question was raised in *Warwick County* v. *Newport News,* where it was held that, "* * * the act under which the city is performing its duty has no relation to the question of taxation, and does not refer thereto. That question is determined by Constitution, section 183." The court then proceeded to hold that the property was liable to taxation "because it is not used either wholly or exclusively for the public purposes of the city of Newport News, and that, having the right to charge reasonable rates, it should be a source of revenue and profit to the city of Newport News, a very substantial part of such profit being derived from the consumers of water outside of the city of Newport News, to whom the city owes no other duty than that which it assumed under the act of 1926."

The opinion seems to overlook the fact that the property is taxable from year to year, and its liability to taxation for any one year depends upon whether or not the city derived a profit from the operation of the water works during the next preceding year. It, therefore, cannot be assumed that there would be a profit each and every year during the entire period of forty years that the bonds issued for the purchase of said property are to run; nor could there be a profit if the city has to levy a tax upon the property of its own citizens to meet the payment of the principal or interest of said bonds, as the same become due,

in the event the revenues of said water works system are at any time insufficient for the purpose, as provided by section 8 of the act. It is, of course, entirely true that the question of taxation is determined by the Constitution and not by the act. At the same time the question of profit, upon which the Constitution bases the question of taxation, is governed, more or less, by the act and not by the Constitution.

In *Warwick County* v. *Newport News,* in accordance with the Constitution of 1902, the inquiry was whether the city derived a profit from the outside use of its water works. Here the inquiry is whether, in accordance with the taxation provisions of the present Constitution (section 183), the city derived a profit in 1928 from the operation of its water works system as a whole; and, if so, whether any building or land, or part thereof, constituting a part of said property, and situated in Warwick and York counties, contributed to the profits. In view of these considerations, we do not think that the act inhibits the city of Newport News from deriving a beneficial profit from the proceeds of its water works, as counsel contend. The act only directs how the proceeds of water furnished consumers in the outlying territories shall be applied. It has no reference to the proceeds of water furnished consumers within the city's corporate limits.

It therefore seems apparent that under the terms of the act itself, after applying all the gross earnings received from outside consumers to the purposes specified by the act, and then applying such part of the gross revenues received from its own consumers as may be necessary to the payment of allowable expenditures, the city will then have the right to cover all the net earnings or profits derived from the operation of its entire water works system into the treasury of the city, to be used for any legitimate municipal purpose it deems fit.

It appears that in 1925 the Corporation Commission assessed for the tax year 1926 all the property located in War-

wick county which then belonged to the Newport News Light and Water Company, and was subsequently purchased by the city of Newport News. In making this assessment the Corporation Commission listed the property under the head of "Real Estate," "Power plant and other buildings," "Land," "Water power rights, etc.," and also listed separately the following items of property: "Mains, Gates and Hydrants," "Services and Paving," "Meters," and "Machinery," with the valuation placed upon each amounting to the total of $1,144,463. After the city acquired the property, the commissioner of the revenue of Warwick county assessed all of this property against the city for each of the years 1927, 1928, and 1929, on the land books of the county, under the head of "Land" and "Improvements" only, at the same aggregate valuation, less several minor items of personalty, such as horses, mules, wagons and supplies, valued by the Corporation Commission at $13,706.

It is asserted that this assessment for the year 1929 is erroneous and void because, under the amended Constitution only "buildings and land" are assessable for taxation; whereas the commissioner of the revenue failed to deduct from the total assessment made by the Corporation Commission the value of the personal property included therein, which is exempt. It is claimed that neither "Mains, Gates and Hydrants," nor "Services and Paving," nor "Meters," nor "Machinery," assessed by the Corporation Commission at a total valuation of $339,645, can be said to be either "buildings" or "land."

Upon the question of whether the mains, gates, hydrants, water pipes and the like of a water company are taxable as "land," the authorities are not uniform. It is, however, stated by the editor of the note appended to *Rudolph* v. *Potomac Electric Power Co.*, 58 App. D. C. 54, 24 F. (2d) 882, in 57 A. L. R. 869, that "* * * when it is considered that the ultimate result in the cases depends not so much upon the status of the property itself as upon the intention of the legislature to be deduced from the language of the

statute under which the tax is derived, the conflict is more apparent than real."

Section 5, paragraph 10, of the Code provides as follows: "The word 'land' or 'lands,' and the words 'real estate' shall be construed to include lands, tenements, and hereditaments, and all rights thereto and interests therein, other than a chattel interest; * * *."

In 1 Minor on Real Property (2d ed.), section 17, the learned author makes the following distinction between "real estate" and "land," under the rules of the common law: "Real property may consist of lands, tenements and hereditaments, the last term signifying property which may be inherited by the heir of a deceased owner. Although this is not a logical classification, it is the usual one and for that reason is adhered to.

"Of these terms the least comprehensive is *'land,'* including not only land itself, and such tangible, visible things as are attached thereto or found therein, such as houses, trees, or crops growing thereon, mineral under the surface, etc.—in short everything fixed upon it and everything belonging or attached to it, above and below the surface, *ab solo usque ad coelum.*"

There appear to be two logical reasons why the definition of the word "land" as given in the statute does not apply in this case: First, because there could be no heir to inherit any interest in the property, as implied by the use of the term "hereditaments;" and, second, unless the meaning of the word in the Constitution is determined independent of the statute, another statute could be enacted to nullify the constitutional intent. We, therefore, think that the word "land" in the Constitution was used advisedly, and was intended to be accepted in a less comprehensive sense than the words "real estate" would, independent of the statute, imply.

An analysis of the decisions on the subject shows that the determination of the question of whether mains, gates, hydrants and pipes owned by water companies are taxable as "land" or "personal property" has been placed upon va-

rious grounds. In one class of cases, they are considered as "real estate," when viewed as appurtenant to the building or machinery to which they are attached, and it is generally held in these cases that under such circumstances the property is taxable where the main works are located. Among the cases holding this view, *Appeal of Des Moines Water Co.,* 48 Iowa 324, and *Colorado Fuel & Iron Co.* v. *Pueblo Water Co.,* 11 Colo. App. 352, 53 Pac. 232, may be cited as typical.

It will be noted that these decisions dealt with the property in question as "real estate," as distinguished from "land," and are also important in determining the situs of the property for the purpose of taxation.

We do not think that these decisions are applicable to the case in judgment. As we understand the facts disclosed by the record, the principal distribution mains of the plant in question run from the pumping station at the Lee Hall reservoir for a distance of more than 68,000 feet to the pumping station within the city limits, whence the water is forced through another distribution main and various pipe lines running through Elizabeth City county, the city of Hampton, the town of Phoebus and other points, for the purpose of supplying water to the people of those communities. It would be unreasonable to suppose that, in using the word "land," the framers of the Constitution intended that all these mains, gates, pipes and hydrants connected with the system, wherever found, should be considered "land," and taxable as such by Warwick county, in which the main works of the plant are located, upon the theory that said appliances are appurtenant thereto. It seems to us that such a theory would be too illogical to be entertained under the circumstances, especially when the word "land" is construed to have been used in its literal sense, as defined by Mr. Minor, and the framers of the Constitution evidently intended.

There is another line of cases, however, holding that, in the absence of statute, water mains, etc., are taxable as

either "land" or "real estate" when permanently affixed to the soil, upon the principle that "land" includes everything fixed upon it and attached to it above or below the surface; the permanency of the fixture being the controlling factor in the conclusion reached. As a result of this conclusion, it seems to be held in these cases that when the respective owners of these appliances also own the land to which they are attached, or an easement in the fee, the appliances are taxable against the owner thereof as "land;" but when the appliances are constructed by an owner having no title to the soil, they are assessable against the owner of the land, and not against the owner of the appliances.

One of the cases taking the view that water mains, etc., are to be considered as fixtures, and taxable as "land" or "real estate" where they are located, is *Paris* v. *Norway Water Co.*, 85 Me. 330, 27 Atl. 143, 144, 21 L. R. A. 525, 35 Am. St. Rep. 371, where the court said: "Aqueducts above or under ground are but conditions suited for carrying water, undefiled, through or over the soil. They are fixtures, permanent in character, and part of the land that sustains them. Size, capacity and the material used in their construction do not change their nature. They are a constituent part of the freehold, and, so long as they remain the property of the owner of the fee, their character as real estate will not be questioned. It is only when they are constructed and occupied by persons or companies having no title in the soil that their classification as property becomes doubtful; that is, the interest of such persons or companies in them becomes of doubtful classification, rather than their generic character, regardless of ownership. * * * In using the street or road, they place their pipes or rails in or upon the ground there permanently to remain. They occupy land with appliances that become valuable for the revenue they yield. These appliances are fixed, permanent, used in connection with the soil that supports and sustains them. When considered as the property of their respective companies, they are not land within the common-law rule. But, when

considered as if owned by the same person who has title to the soil, they may properly enough be so considered."

In *Providence Gas Co.* v. *Thurber,* 2 R. I. 15, 55 Am. Dec. 621, it was held that, where pipes were sunk in the soil of the street to a depth of several feet under the surface and could not be removed without digging up the earth, the pipes being annexed to the freehold and the gas company having an easement in the fee in the nature of an incorporeal hereditament, the pipes constituted fixtures and were rightfully assessed as real estate.

With the view that water mains, etc., are to be regarded as fixtures and taxable as "land," under the Constitution and the facts of this case, we are in accord. It appears that of the 68,644 feet of distribution mains belonging to the city of Newport News located in Warwick county, 7,266 feet of the same are on land owned by the city in fee; 10,200 feet are under the public highway, and the remainder on land belonging to other parties in which the city owns an easement. We are, therefore, of the opinion that these mains, together with the gates, hydrants and pipes annexed thereto, within the limits of Warwick county, constitute fixtures upon the "land" to which they are attached, and are, therefore, taxable as "land" by the county, under the Constitution.

As to the appliances, "Service and Paving," and "Machinery," claimed to be personalty and therefore exempt, the record does not afford us the specific information necessary to decide whether they may be considered permanent fixtures and taxable as "land" or not. As in all other such instances, the answer to the question depends upon the facts and circumstances of each particular case. With reference to the question of machinery, however, the following statement of the law from 11 R. C. L., page 1085, may be pertinent:

"The mere use of machinery in a mill does not render it a fixture, but the question always depends on the nature of the use and character of the annexation, and the

intention of the parties * * *. On the principle that the intention of the owner is the main consideration in determining whether or not an attachment is a fixture, machinery is personalty where no intent appears to have had it become a part of the realty, and it was not specifically designed for the building, but of a common lot and description, especially when it is capable of removal without material injury to it or to the building and may be used elsewhere. And under the same rule, machinery remains personalty when it was placed in a building for a mere temporary purpose. On the other hand, though still considering the intent as the controlling circumstance, if machinery is intended for permanent use in carrying on the business for which the building was erected or is used, and as a permanent accession to the realty, it becomes part of the realty on being installed thereon, and if such was the intention, it is immaterial that the machines may be removed and used elsewhere, and that they may be removed without injury to the building. * * * This rule has special application to heavy machinery intended for the building, and not intended to be moved from place to place, though resting in position by its own weight, and to machinery which is a constituent part of a factory or shop and indispensable thereto, though not actually fastened. So where the principal part of machinery is a fixture and a part of the realty, the parts which are not physically annexed but which if moved would leave the principal part unfit for use, are considered as being conclusively annexed."

Applying these rules to the machinery in question, we think it can be easily determined by the commissioner of the revenue and the city what part of it, if any, is assessable for taxation as a part of the building or land to which it is annexed, and what part of it, if any, is exempt as personalty.

Considering the purpose for which water meters are used, and the character of the appliance, we do not think they can be considered in any way as permanent fix-

tures, and therefore hold them to be personal property and exempt from taxation in this case, under the provisions of the Constitution controlling the question.

It is assigned as error that the trial court held that all the personal property as well as all the buildings and land belonging to the city of Newport News, and situated in Warwick and York counties, is liable to taxation.

We do not think the judgment entered by the court sustains this contention. As we understand the judgment in the light of the written opinion filed with the record, the trial court did not pass upon the question of personal property at all, but entirely ignored the matter, taking the view that the assessment complained of only included "land with improvements thereon," and the question of personal property was not involved in the proceedings. While it may be true, as held by the court, that it was without jurisdiction to correct the *valuations* placed upon the real estate belonging to the city by the assessment, because the application for correction was not made within two years from the 31st day of December of the year within which the assessment was made, that was not the actual question before the court. The real ground upon which the city relied and asked for correction of the assessment, and to which all the evidence was directed, was, as stated in the application, that all the property owned by the municipality, assessed by the commissioner of the revenue for the year 1929, both real and personal, was exempt from taxation under section 183 of the Constitution, as revised and amended in 1928. As before stated, it was also claimed by the city in the proceedings that the assessment was unconstitutional and void because the commissioner of the revenue included in the assessment of "land and improvements" certain personal property belonging to the city which is exempt under the self-operating provisions of the revised Constitution. This necessitated the determination of whether mains, gates, hydrants, pipes, meters and machinery constitute personal property, as the city claims, or should, for the purposes of

taxation, be classified as "buildings" or "land," which, under the same constitutional provisions, are not exempt when leased or are a source of revenue or profit. The failure of the trial court to inquire into and decide this question, under the circumstances, may have constituted technical error, but, in view of our conclusions in regard to the matter, the error, if any, is harmless as far as the city is concerned.

It is also claimed by the counsel for the city that the court erred in holding that the matter of valuation was *res adjudicata*, because it was one of the issues raised in *Warwick County* v. *City of Newport News*, 153 Va. 789, 798, 151 S. E. 417. While it is alleged in the application that the property was assessed above its fair market value, we find no evidence in the record to show otherwise, and, as stated, that was not the real question involved. For these reasons this assignment of error presents a moot question, and we, therefore, deem it unnecessary to decide it.

In view of the conclusions expressed, we are of opinion that the judgment of the trial court should be affirmed, in so far as it holds that the lands and buildings thereon, belonging to the city of Newport News as a part of its water works system, situated in Warwick county, were a source of revenue or profit to said city of Newport News during the year 1928, within the meaning of section 183 of the Constitution, as amended, and liable to taxation by Warwick county for the year 1929; but the judgment should be amended in accordance with the views expressed in this opinion that all mains, gates, water pipes and hydrants connected with the water works system owned by the city of Newport News, situated in Warwick county, constitute "land" within the meaning of section 183 of the Constitution, and are assessable for taxation as such by the county for the year 1929; and that water meters connected with the system are personal property, and, under the Constitution, exempt from taxation.

Before concluding this opinion the court deems it advisable to specifically call attention to the fact that when the Constitution was revised in 1928, the "buildings and land" clause embraced in section 183, was amended by the addition of these words: "But the General Assembly may provide for the partial taxation of property not used exclusively for the purposes herein named." Considering the language of this amendment in connection with the omission of the qualifying words, "used wholly and exclusively for county, city, town and public school purposes," from subsection (a) of the revised section (183), we are of the opinion that it was the purpose and intent of the framers of the revised Constitution, by this amendment, to give the General Assembly authority to partially exempt from taxation property belonging to the above mentioned political subdivisions of the State, which is not used wholly and exclusively for their own respective purposes and thereby place such property to some extent at least on the same plane as it occupied with reference to taxation under section 183 of the Constitution before it was revised. This construction is not only in keeping with what was said in the report of the revisors and the rules of construction prescribed by the amended Constitution itself, but is the only meaning which can be given to the words employed in the amendment. This provision of the present Constitution is not, however, self-executing, and could have no effect without legislative action. Accordingly, the General Assembly of 1930, evidently placing this construction upon the amendment, and in order to give effect thereto, adopted section 435-a of the Tax Code (Acts 1930, page 833, chapter 397).

Our conclusion is, therefore, that under the provisions of the above act, and the authority given the legislature by the amendment referred to, for the year 1930 and each succeeding year thereafter, buildings and land belonging to the city of Newport News, constituting a part of its water works system, and which are a source of net revenue or profit, as hereinbefore set forth, are only assessable for

taxation by the county of Warwick for the portion of the fair market value thereof situated in said county, in the proportion that the gross revenues of said water works system derived from consumers outside of the limits of said city of Newport News bears to the gross revenues derived from the operation of the whole of said water works system; said proportion for the year 1930 and each succeeding year thereafter to be based on the gross revenues of the year next preceding, according to the terms and provisions of said act.

*Amended and affirmed.*

HOLT, J., concurs in result.

EPES, J., dissenting.

While I concur in the conclusion reached by the court that the land and buildings, the assessment of which for the year 1929 is here called in question, were taxable for that year, I do not concur in the views expressed by the court as to why this is true. I am also not in accord with several of the other holdings of the court in this cause. I shall not undertake to point out all the views of the court with which I do not concur, but feel that I should point out some of them.

My view is that the land and buildings, the assessment of which is here in question, were taxable because the city of Newport News was receiving a substantial "revenue or profit" from the use thereof to a material extent for purposes other than the rendering of service to the people within its corporate limits.

I do not construe "revenue or profit" as used in section 183 of the Constitution to mean net revenue or net profit. I think profit is there used in the sense that it is used in the expression *rents and profits,* or the expression *mesne profit,* and not in the sense that it is used when it is said that a business corporation made a net profit in a given year. If this be true, it is not necessary to inquire whether the city

received a *net revenue* or a *net profit* from the operation of its water works system or not. However, did I deem it pertinent to inquire whether the city made a net profit from the operation of its water works system, I could not concur with the court in the use of the formula prescribed by it for determining net profits.

Section 183 of the Constitution, both as it read prior to the amendment of 1928 and as it now reads, is composed of (1) an introductory paragraph declaring that "the following property and no other shall be exempt from taxation" except as (unless) otherwise provided in the Constitution; (2) seven paragraphs lettered from (a) to (g), inclusive, enumerating the classes of property which shall be exempt from taxation, and (3) following these lettered paragraphs, certain other paragraphs in one of which appears the language which is quoted by the court in its opinion following the paragraph indicator (g). Neither before nor after the amendment of 1928 has the language quoted by the court as following the paragraph indicator (g) been any part of paragraph (g). I am of the opinion that this language both before and since the amendment of 1928, has been applicable to all the property mentioned in all the paragraphs lettered (a) to (g), inclusive.

Having reached the conclusion that the land and buildings here in question were taxable, I think that the petition for the correction of the assessment thereof was filed too late, and cannot now be corrected.

Three tracts of land are here involved. When the commissioner of the revenue came to assess these lands in 1929, in each case he valued the land without improvements at a specified sum, and the improvements thereon at a specified sum, and extended the total as the assessed value of the tract of land and improvements. In no case did he designate what he included as land or what he included as improvements. This petition was not filed until after the two years allowed by statute for filing a petition for the correction of an assessment of lands.

It is true that the commissioner has assessed these tracts of land and the improvement thereon. at substantially the same amount at which the Corporation Commission had theretofore assessed both the real and personal property of the water company whose property was acquired by the city. It may be that when he did this he over-valued the land and the improvements thereon, *i. e.,* the real estate with which the city is assessed. But, if so, we have here merely an erroneous assessment, erroneous because of the over-valuation of the property with which the city is assessed. The commissioner has not assessed the city with any personal property. The fact that land properly assessable at $5,000 has been assessed at $6,000, because the commissioner found on it $1,000 of personal property which he erroneously assumed constituted a part of the improvements on the land, is not the assessment of the owner with real estate valued at $5,000 and personal property valued at $1,000. It is the erroneous assessment of the land at $6,000, when its correct assessed value is $5,000.

My conclusion, then, is that the judgment of the trial court should be affirmed without modification thereof.

*On Petition for Rehearing.*

Richmond, January 25, 1933.

CAMPBELL, C. J.:

Since the opinion was handed down in this case a petition for rehearing has been filed by the city of Newport News, which contains the following statement:

"Under the decision, a city using its property wholly and exclusively for city purposes, but making revenue sufficient to pay bonds, is taxed upon the whole value of its property, while a city supplying water to consumers outside of its corporate limits, under like circumstances, is taxed only partially."

In answer to this assertion the court deems it only necessary to say that the opinion in question expressly applies the construction therein placed upon the amended section (183) of the Constitution to the facts and circumstances of the case under consideration, and does not undertake to apply such construction to a situation in which a municipality owns and operates a water works system wholly and exclusively for its own municipal purposes. The liability of a city's water works property to taxation under the last named circumstances is not involved in the case in judgment, and it was not intended to express any opinion upon that question.

With this addendum, the opinion previously handed down is adhered to in all respects, and the petition for rehearing is, therefore, denied.